UNITED STATES FIDELITY & GUARANTY COMPANY v GROUP
°HEALTH PLAN OF SOUTHEAST MICHIGAN

Docket No. 66396. Submitted June 8, 1983, at Detroit.—Decided
December 20, 1983.

Joseph White, III, his wife and daughter, were injured in an
automobile accident. At the time of the accident, Joseph White,
III, was insured under a no-fault automobile insurance policy
issued by the United States Fidelity & Guaranty Company.
White was charged a reduced premium because he elected a
coordination-of-benefits provision in his policy which provided
that the insurance did not apply to the extent that any other
service benefit plan would provide similar benefits without
regard to fault for bodily injury sustained as a result of the
operation, maintenance or use, including the loading or unload-
ing, of a motor vehicle. White also had health coverage for
himself and his family under a group subscriber contract with
Group Health Plan of Southeast Michigan, a federally qualified
and state licensed health maintenance organization. That con-
tract contained a provision that if a subscriber was eligible for
medical or dental benefits under any other insurance, including
automobile insurance, the benefits provided by the HMO may
be reduced. Both USF&G and GHP initially denied coverage
but later agreed to split the Whites' medical expenses equally,
but reserving their right to seek reimbursement each against
the other. USF&G filed suit in Wayne Circuit Court against
GHP seeking indemnification and a declaratory judgment. GHP
counterclaimed for indemnification, subrogation, and a declara-
tory judgment. The court, Robert J. Colombo, J., entered a
declaratory judgment finding that USF&G and GHP should
bear equally the medical expenses incurred by the White
family. USF&G appealed and GHP cross-appealed. *Held:*

The defendant GHP is primarily liable for the Whites' medi-

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am Jur 2d, Automobile Insurance §§ 287, 340.
Validity and construction of "no-fault" automobile insurance plans.
42 ALR3d 229.

[2] 43 Am Jur 2d, Insurance § 283.

[3] 43 Am Jur 2d, Insurance §§ 276, 278, 291.

cal expenses. The excess liability clause in the insurance policy issued by USF&G clearly provides that the insurer has only secondary liability. The excess liability clause in the contract with GHP states that benefits may be reduced but it is not clear whether a claimant must merely qualify for, or actually receive, other benefits for the provision to operate.

Affirmed in part and reversed in part.

1. Insurance — No-Fault Insurance — Health and Accident Coverage.

Services offered by a health maintenance organization that are prepaid by the participant constitute health and accident coverage as defined by the section of the no-fault automobile insurance act allowing an insurer who provides personal protection insurance benefits to offer reduced premiums to its insured where the insured has other health and accident coverage (MCL 500.3109a; MSA 24.13109[1]).

2. Insurance — Ambiguities in Contract.

Ambiguities in an insurance contract should be liberally construed in the insured's favor and must be construed in accord with the ordinary and popular sense of the language used therein.

3. Insurance — Limitations in Policy.

An insurer has a duty to clearly express the limitations in its policy of insurance, and a technical construction of policy language which would defeat a reasonable expectation of coverage is not favored.

*Davidson, Gotshall, Kohl, Secrest, Wardle, Lynch & Clark* (by *Edward D. Plato* and *Lanie Anderson),* for plaintiff.

*Kerr, Russell & Weber* (by *Curtis J. DeRoo* and *Anthony S. Kogut),* for defendant.

Amicus Curiae:

*Lewis, White & Clay* (by *C. Jaye Berger),* for the Association of Health Maintenance Organizations of Michigan.

Before: D. F. Walsh, P.J., and Beasley and D. L. Sullivan,* JJ.

Per Curiam. On August 19, 1982, the trial court issued a declaratory judgment holding each party 50% liable for medical expenses in the present case. Both parties appeal as of right.

On November 3, 1979, Joseph, Madeline, and Marie White were injured in a car accident. At the time, Joseph White had no-fault insurance from plaintiff. This policy provides:

"This insurance does not apply to the extent that any amounts are paid or payable for allowable expenses to or on behalf of such named insured or relative under the provisions of any other insurance, service benefit or reimbursement plan providing similar direct benefits, without regard to fault, for bodily injury sustained as a result of the operation, maintenance or use, including the loading or unloading of a motor vehicle."

This clause is allowed by MCL 500.3109a; MSA 24.13109(1):

"An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household."

Because Joseph White elected the coordination-of-benefits provision included in his no-fault policy with plaintiff, he was charged a reduced premium.

* Circuit judge, sitting on the Court of Appeals by assignment.

At the same time, Joseph White also had health coverage under a group subscriber contract with defendant, a federally qualified and state licensed health maintenance organization (HMO). This contract has the following provision:

"If a person is eligible for medical or dental benefits under any plan of medical coverage or under any other type of insurance, including automobile insurance, the benefits provided by GHP may be reduced (or GHP may collect from the members amounts received by him) so that during the calendar year up to, but not more than, 100% of the person(')s medical and dental expenses (at least a portion of which is covered under one or more such plans) will be paid by all such plans."

The applicable coordination-of-benefits provision is 42 USC 300e(b)(1):

"The requirements of this paragraph respecting the basic health services payment shall not apply to the provision of basic health services to a member for an illness or injury for which the member is entitled to benefits under a workmen's compensation law or an insurance policy but only to the extent such benefits apply to such services. For the provision of such services for an illness or injury for which a member is entitled to benefits under such a law, the health maintenance organization may, if authorized by such law, charge or authorize the provider of such services to charge, in accordance with the charges allowed under such law, the insurance carrier, employer, or other entity which under such law is to pay for the provision of such services or, to the extent that such member has been paid under such law for such services, such member. For the provision of such services for an illness or injury for which a member is entitled to benefits under an insurance policy, a health maintenance organization may charge or authorize the provider of such services to charge the insurance carrier under such policy or, to

the extent that such member has been paid under such policy for such services, such member."

42 CFR 110.105(d)(2) provides:

"For the provision of services for an illness or injury for which a member is entitled to benefits under an insurance policy, an HMO may charge or authorize the provider of the services to charge: (i) The insurance carrier under the policy, or (ii) the member, to the extent that the member has been paid under the policy for the services."

The basic issue, as argued by the parties, is when both the no-fault policy and the HMO policy contain secondary or excess clauses, who must pay after an accident?

Defendant first argues that it should not be forced to pay because it does not provide "health and accident coverage" as covered by MCL 500.3109a; MSA 24.13109(1). To a certain extent, HMOs do have a unique character. Rather than providing health insurance and paying for the bills after the insured has been treated by a doctor, an HMO is a prepaid plan where the participant pays before hand for the services themselves. See Chafetz, *The Federally Qualified Health Maintenance Organization: An Analysis of Federal Legislation Agency Action,* 16 New Eng L Rev 689 (1981). Under traditional definitions, a health maintenance organization does not sell insurance. *New Mexico Life Ins Guarantee Ass'n v Moore,* 93 NM 47; 596 P2d 260 (1979).

But MCL 500.3109a; MSA 24.13109(1) does not refer to "insurance" but to "health and accident coverage". Not only have medical and disability benefits from the Army and the Veteran's Administration been included within this statute, *Bagley*

*v State Farm Mutual Automobile Ins Co,* 101 Mich App 733; 300 NW2d· 322 (1980), but Medicare payments have also been included. *LeBlanc v State Farm Mutual Automobile Ins Co,* 410 Mich 173; 301 NW2d 775 (1981). The term used, "coverage", is a broad term. *Nyquist v Aetna Ins Co,* 84 Mich App 589; 269 NW2d 687 (1978), *aff'd* 404 Mich 817; 280 NW2d 792 (1979). Accordingly, we hold that the services offered by defendant are "health and accident coverage" as defined by MCL 500.3109a; MSA 24.13109(1).

Although plaintiff's excess liability clause may not be easy for a layman to understand, once deciphered, it clearly states that the insurer has only secondary liability. On the other hand, defendant's excess liability clause is not so clear. Although it clearly tells the participant that he will not receive double recovery, it does not so clearly state that the participant must first look to the other benefit provider. First, it only states that benefits provided by defendant *"may* be reduced". Second, whether a claimant must merely qualify for, or actually receive, other benefits for the provision to operate is unclear. In *Griswold v Union Labor Life Ins Co,* 186 Conn 507; 442 A2d 920, 922 (1982), the group health policy insurer had the following clause in its policy:

"1. Effective January 1, 1975, benefits otherwise payable under the Group Policy for Allowable Expense incurred during a Claims Determination Period shall be reduced to the extent necessary so that the sum of such reduced benefits under all Plans shall not exceed the total of such Allowable Expenses. * * *

"2. Definitions: a. 'Plan' refers to any plan providing benefits or services for or by reason of Allowable Expenses, which benefits or services are provided by * * * (iv) any coverage under governmental programs, and any coverage required or provided by any statute, and (v),

any group or individual automobile 'No-Fault' insurance policy."

The Connecticut Supreme Court found this clause ambiguous:

"Upon reading the anti-duplication clause as it has been written by the authors of the contract, we cannot say with any degree of certainty whether it was intended to exclude not only monies or benefits actually received but also those capable of being received under any coverage required or provided by any statute or no-fault insurance policy. As we have already noted, where the terms are ambiguous and susceptible to more than one interpretation, that which is more favorable to the insured should be adopted. Moreover, 'this rule of construction favorable to the insured extends to exclusion clauses. * * *.' * * * Therefore, the interpretation which sustains the claim must be adopted." 442 A2d 923-924.

Ambiguities in an insurance contract[1] are liberally construed in the insured's favor. *Herring v Golden State Mutual Life Ins Co,* 114 Mich App 148; 318 NW2d 641 (1982); *Interstate Fire & Casualty Co v Hartford Fire Ins Co,* 548 F Supp 1185, 1187 (ED Mich, 1982). In fact, "[i]nsurance policies must be construed in accord with the ordinary and popular sense of the language used therein. * * * To be given full effect, an insurer has a duty to clearly express the limitations in its policy. * * * A technical construction of policy language which would defeat a reasonable expectation of coverage is not favored." *State Farm Mutual Automobile Ins Co v Ruuska,* 90 Mich App 767, 777-778; 282 NW2d 472 (1979), *aff'd* 412 Mich 321; 314 NW2d 184 (1982).

Because plaintiff's "excess liability" clause

---

[1] Although we realize that HMOs are not (traditionally defined) insurance companies, we believe that the same contract construction rules apply.

clearly states that it provides only secondary coverage while defendant's "excess liability" clause does not so clearly state, we hold that defendant is primarily liable in this case. In fact, this result is precisely what Joseph White expected. In his August 26, 1981, affidavit, he stated:

"I believed and fully expected that the Group Health Plan of Southeast Michigan would provide coverage for all necessary medical expenses incurred by me as a result of sickness or injury to myself or my family, even if such injuries arose out of an automobile accident.

*  *  *

"Although I was aware of a coordination of benefits clause as a result of my inquiries to be provided with a copy of the contract I was told by Group Health Plan that this clause simply meant that I could not collect more than 100% payment for any medical expenses.

*  *  *

"I was aware that the automobile insurance policy I had purchased * * * contained a coordination of benefits clause under which United States Fidelity and Guaranty Company would be liable for payment of medical expenses only to the extent that such expenses were in excess of the medical expenses provided under any individual or group health insurance or plan and I was aware that I had received a reduction in my premium rates from United States Fidelity & Guaranty Company as a result of my choosing to have a coordination of medical benefits under the * * * policy rather than having full coverage for medical expenses * * *.

"I obtained the coordination of benefits coverage or excess medical coverage under the United States Fidelity and Guaranty policy under the belief and expectation that my family and I would have full coverage from the Group Health Plan of Southeast Michigan for any medical expenses arising out of any injury or illness, including injury incurred in an automobile accident."

Affirmed in part and reversed in part.