DEAN v AUTO CLUB INSURANCE ASSOCIATION

Docket No. 74314. Submitted June 13, 1984, at Detroit.—Decided
November 20, 1984. Leave to appeal applied for.

Plaintiffs, Christopher B. Dean, D.C. and R. James Gregg, D.C.,
are licensed chiropracters who are participating health care
providers under a Blue Cross & Blue Shield of Michigan health
care plan. Plaintiffs brought an action for declaratory relief
against Auto Club Insurance Association, alleging that they
were entitled to reimbursement from defendant, for services
provided to defendant's insureds under no-fault automobile
insurance policies, of the difference between plaintiffs' charges
for those services and the amount of reimbursement they
received from Blue Cross where the injured persons were Blue
Cross subscribers as well as defendant's insureds. Plaintiffs
alleged that defendant had, until recently, paid the difference
between the Blue Cross reimbursement and plaintiffs' custom-
ary charge for the services, but had discontinued such pay-
ments. The Wayne Circuit Court, Paul S. Teranes, J., granted
summary judgment to defendant, holding that defendant was
required to pay only those sums which its insureds were
obligated to pay and that certain sections of the no-fault act
were not applicable to the case. Plaintiffs appealed. *Held:*

The statute requiring coordination of benefits provisions to be
offered by no-fault insurers expresses a legislative intent not to
allow participating health care providers to seek additional
reimbursement from no-fault insurers over and above that
received from Blue Cross and Blue Shield of Michigan. Plain-
tiffs must accept the reimbursement rate prescribed by Blue
Cross for services rendered to patients who are *not* also covered
by no-fault insurance, and it is the policy of this state that the

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am Jur 2d, Automobile Insurance § 368.

7A Am Jur 2d, Automobile Insurance § 431.

Validity and construction of no-fault insurance plans providing for
reduction of benefits otherwise payable by amounts receivable
from independent collateral sources. 10 ALR4th 996.

Validity and construction of "no-fault" automobile insurance plans.
42 ALR3d 229.

existence of no-fault insurance shall not increase the cost of health care.

Affirmed.

INSURANCE — NO-FAULT INSURANCE — COORDINATION OF BENEFITS — PHYSICIANS AND SURGEONS.

The statute requiring no-fault insurers to offer coordination of benefits provisions in their insurance policies expresses a legislative intent not to allow health care providers who participate in Blue Cross & Blue Shield of Michigan health insurance plans to seek additional reimbursement for services from no-fault insurers over and above the reimbursement they recieve for those services from Blue Cross & Blue Shield (MCL 500.3109a; MSA 24.13109[1]).

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Donald J. Gasiorek* and *Patrick B. McCauley*), for plaintiffs.

*Dickinson, Mourad, Brandt, Hanlon & Becker* (by *C. T. McCutcheon, Jr.*), and *Gromek, Bendure & Thomas* (by *James G. Gross*), of counsel, for defendant.

Before: DANHOF, C.J., and T. M. BURNS and T. C. MEGARGLE,* JJ.

PER CURIAM. The instant case comes before this Court on plaintiffs' appeal as of right from an order of summary judgment entered in favor of defendant. Plaintiffs sought declaratory relief below, requesting payment from defendant for certain medical services rendered to defendant's insureds. We affirm.

Initially, we note that defendant moved for summary judgment in lieu of a responsive pleading. Although defendant's motion did not state specifically under which subrule of GCR 1963, 117.2 the motion was brought, it appears that defendant moved pursuant to GCR 117.2(1). Accordingly, we

---

* Circuit judge, sitting on the Court of Appeals by assignment.

accept as true the well-pled facts in plaintiffs' complaint. *Borman's, Inc v Lake State Development Co,* 60 Mich App 175, 179; 230 NW2d 363 (1975).

Plaintiffs are duly licensed chiropractors within this state and participate as "health care providers" under a Blue Cross & Blue Shield of Michigan health care plan. Although we do not have benefit of a copy of the actual plan involved herein, MCL 550.1502(1); MSA 24.660(502)(1) sets forth the general conditions for health care agreements between a health care corporation and a professional health care provider:

"(1) A health care corporation may enter into participating contracts for reimbursement with professional health care providers practicing legally in this state for health care services which the professional health care providers may legally perform. A participating contract may cover all members or may be a separate and individual contract on a per claim basis, as set forth in the provider class plan, *if, in entering into a separate and individual contract on a per claim basis, the participating provider certifies to the health care corporation:*

"(a) *That the provider will accept payment from the corporation as payment in full for services rendered for the specified claim for the member indicated.*

"(b) That the provider will accept payment from the corporation as payment in full for all cases involving the procedure specified, for the duration of the calendar year." (Emphasis added.)

In the instant case, plaintiffs averred that they perform professional services on many patients who have been involved in automobile accidents and who are both BCBSM subscribers and insureds of defendant under policies of no-fault insurance. Payment for such services is made by BCBSM pursuant to its contract with plaintiffs. However, pursuant to the same contract, as well as the

above-cited portion of MCL 550.1502(1), plaintiffs must accept payment from BCBSM *as payment in full* for the services rendered. Until recently, according to plaintiffs, payment was nevertheless made by defendant on the difference between the contractually-set reimbursement rate paid by BCBSM and plaintiffs' "customary" charge for such services. An example cited by plaintiffs concerns their practice with respect to x-rays. Plaintiffs normally charge $30 per x-ray, but, pursuant to agreement, BCBSM pays only $20 for such. The remaining $10 was paid by defendant pursuant to policies of no-fault insurance with its insureds who were injured in automobile accidents.

Recently, however, defendant has instituted a policy whereby payment to participating health care providers in excess of the amount paid by BCBSM is *not* made. Plaintiffs seek continued payment of this excess. Defendant bases its refusal to pay the excess on the following language in its no-fault insurance contracts:

"We agree to pay in accordance with the Code the following benefits *to or for an insured person* (or, in case of his/her death, to or for the benefit of his/her dependent survivor[s],) *who suffers accidental bodily injury* arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle.
"MEDICAL BENEFITS (ALLOWABLE EXPENSES)
"All reasonable *charges incurred* for reasonably necessary products, services and accommodations for an insured person's care, recovery or rehabilitation." (Emphasis added.)

Defendant reasons that, because its insureds may not be charged more than the reimbursement rate pursuant to plaintiffs' agreement with BCBSM, the excess charges are not "incurred" by defendant's insureds inasmuch as they are not

obligated to pay such. Furthermore, defendant's policies of insurance contain the following coordination-of-benefits clause:

"If the declaration certificate shows coordinated medical benefits, *sums paid or payable to or for you* or any relative *shall be reduced by any amount paid or payable under any valid and collectible:* individual, blanket or group disability or hospitalization insurance; medical, surgical or *hospital direct pay or reimbursement health care plan;* worker's compensation law, disability law of a similar nature, or any other state or federal law; or car or premises insurance affording medical expense benefits." (Emphasis added.)

Defendant further reasons with respect to this clause that, by making specific reference in the contract to other insurance or health care plans with which defendant's coverage is coordinated, its policies of no-fault insurance expressly contemplate incorporating the substance of those plans into the no-fault agreement; that is, BCBSM's reimbursement rate for given services is expressly incorporated into the policies.

As noted, defendant moved for summary judgment. In addition to the above arguments, defendant argued that plaintiffs lacked standing to assert rights under a contract to which they were not parties. Plaintiffs also moved for summary judgment. In an opinion issued on September 22, 1983, the lower court held that plaintiffs did *not* lack standing because an actual controversy existed, that defendant was required to pay only those sums which its insureds were charged and obligated to pay, and that §§ 3107 and 3157 of the no-fault act, MCL 500.3107 and 500.3157; MSA 24.13107 and 24.13157, were not applicable to the instant situation. These provisions are discussed below.

Plaintiffs challenge defendant's refusal to tender payment on the excess charges as being unfair and contrary to the import of defendant's no-fault insurance policies. Plaintiffs further contend that defendant is not a third-party beneficiary of the BCBSM health care provider contract with plaintiffs, so that defendant has no right to limit its obligations on the basis of language in plaintiffs' provider agreement. Finally, plaintiffs posit that, pursuant to § 3107 of the no-fault act, they are entitled to a "reasonable fee" and that § 3157's proscription against charging other than the "customary fee" where insurance is involved is not implicated because "customarily" they would charge, for example, $30 for x-rays rather than the $20 allowed by BCBSM. We find plaintiffs' position untenable.

As a preliminary matter, we decline to address the issue of plaintiffs' standing. Plaintiffs correctly assert that defendant has not cross-appealed this issue. Moreover, plaintiffs brought a motion to dismiss the appeal on the basis of mootness and, to some extent, lack of standing, since defendant had begun to make the contested payments in the interim. Defendant opposed plaintiffs' motion, and we denied it. Therefore, we will not address the standing issue.

Turning to the substance of plaintiffs' claim, we specifically hold that granting plaintiffs their requested relief—to compel defendant to make payment on the difference between the BCBSM reimbursement rate and plaintiffs' "reasonable" and "customary" fee—would contravene public policy.

The instant dispute focuses on the coordination-of-benefits clause in defendant's no-fault insurance policies. Such clauses are specifically authorized by § 3109a of the no-fault act, which provides:

"An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably *related to other health and accident coverage on the insured.* The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household." MCL 500.3109a; MSA 24.13109(1).

It has been held that this provision of the no-fault act "was inextricably tied to coordination of insurance protection with Blue Cross-Blue Shield-type benefits". *Nyquist v Aetna Ins Co,* 84 Mich App 589, 592; 269 NW2d 687 (1978), *aff'd* 404 Mich 817; 280 NW2d 792 (1979). Indeed, a report on HR 5724, subsequently enacted into 1974 PA 72 (the present § 3109a), which was prepared by the Analysis Section of the House Insurance Committee and which was quoted with approval by the Supreme Court in *LeBlanc v State Farm Mutual Automobile Ins Co,* 410 Mich 173, 196-197; 301 NW2d 775 (1981), recites this relation to BCBSM coverage as one of the goals of § 3109a. The relevant portion of that report reads as follows:

"*Argument For:*
"The bill would save millions of dollars for Michigan drivers and would offer them an opportunity to eliminate their duplicate, overlapping insurance coverage since automobile insurers would be required to offer deductibles of exclusions which wrap-around a policyholder's health and accident coverage. No-fault insurers would offer these deductions at reduced premiums, and State insurance official estimate the 5 to 6 million Michigan drivers could save $100 million annually.
"*Agrument For:*
"Passage of the bill would create more flexibility in health and accident coverage by offering consumers an insurance option which the vast majority of underwrit-

ers operating in Michigan do not offer. Further, if the Blue Cross/Blue Shield plans gain approval for their proposed modifications, the consumer seeking health and accident coverage will have yet another option from which to choose. The bill does not make it mandatory for an insurance buyer to select these deductibles and exclusions so many could still opt for overlapping coverage.

"*Argument For:*

"*The skyrocketing hospital and medical costs could be contained to a greater extent with health and accident as the primary coverage since these policies, like the Blue Cross/Blue Shield plans, have established limits on their reimbursement of doctor and hospital expenses. A physician who knows his or her patient has unlimited medical coverage has no incentive to keep the doctor bill at a minimum.*" (Emphasis added.)

We think the above-emphasized language is clear that the legislative mandate (embodied in § 3109a) requiring insurance companies to offer coordination-of-benefits clauses to their insureds contemplated the very situation presented here and sought to place a check on health care providers who have "no incentive to keep the doctor bill at a minimum". In other words, the Legislature did not intend to allow participating health care providers to seek additional reimbursement from no-fault insurers over and above the BCBSM reimbursement rate. The no-fault act was as concerned with the rising cost of health care as it was with providing an efficient system of automobile insurance. And there is little doubt that the legislation governing health care corporations (BCBSM), MCL 550.1101 *et seq.;* MSA 24.660(101) *et seq.,* had as its chief concern the affordability of health care. See generally the discussion in *Blue Cross & Blue Shield of Michigan v Insurance Comm'r,* 403 Mich 399; 270 NW2d 845 (1978). Accordingly, plaintiffs may not participate in the BCBSM health care

plan and then frustrate the legislative attempt to contain health care costs by simply seeking payment on the excess from no-fault insurers.

We find further support for this position in § 3157 of the no-fault act. That section provides that:

"[a] physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may charge a reasonable amount for the products, services and accommodations rendered. *The charge shall not exceed the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance.*" (Emphasis added.) MCL 500.3157; MSA 24.13157.

The lower court stated that § 3157 had no application "in that the customary fees charged by a physician are not at issue when the plaintiffs have entered into a provider contract with BCBSM". Section 3157 is, however, instructive on this issue. It represents the policy of this state that the existence of no-fault insurance *shall not* increase the cost of health care. In the context of the instant case, plaintiffs must accept the reimbursement rate prescribed by BCBSM for services rendered to patients whose injuries do *not* arise from situations covered by no-fault insurance. See MCL 550.1502; MSA 24.660(502). To seek remuneration in excess of the prescribed reimbursement rate for services rendered to "no-fault patients" collides directly with § 3157. This conclusion results irrespective of the reasonableness of the fees sought to be recovered, since plaintiffs seek such remuneration solely on the basis of the existence of no-fault insurance.

We do not address plaintiffs' contentions that defendant is not a third-party beneficiary to their provider contract with BCBSM. Nor do we address defendant's argument that its no-fault insurance policies incorporate such agreement by reference. Our decision is not based on the construction of either plaintiffs' provider contract or defendant's insurance policies. Rather, we hold, as a matter of public policy, that the relief sought by plaintiffs is precluded by the intent and spirit of the no-fault act.

Affirmed. No costs, a public question being involved.