AUTO CLUB INSURANCE ASSOCIATION v FREDERICK AND
HERRUD, INC

Docket No. 79289. Submitted June 10, 1985, at Detroit.—Decided
September 16, 1985.

Plaintiff, Auto Club Insurance Association, issued policies of no-
fault insurance which contained coordination of benefits
clauses, providing that plaintiff was obligated to pay medical
benefits for injuries resulting from automobile accidents unless
the insureds were covered by another source providing such
benefits. Defendant, Frederick and Herrud, Inc., provided its
employees with health and accident benefits. Its contract specif-
ically provided that benefits were not payable if the insured
was covered by no-fault insurance. Plaintiff brought an action
against defendant, alleging that it had paid no-fault benefits to
seven of its named insureds who were employees of defendant.
Plaintiff sought reimbursement of the amount paid, on the
basis that defendant's contract was primary. Defendant alleged
that plaintiff's policies were primary. The Oakland Circuit
Court, Frederick C. Ziem, J., held that, because the contracts
were unambiguous, the proper remedy was to hold each party
responsible for payment of one-half the benefits owed to the
insureds. Defendant appealed, and the plaintiff cross-appealed.
*Held:*

The Legislature, in providing that no-fault insurers were
required to offer coordination of benefits options to their in-
sureds, clearly intended that under such clauses no-fault cover-
age would be secondary. Therefore, an insured's health and
accident insurance benefits must be considered primary in
order to effectuate the intent of the Legislature in reducing the
cost of mandatory insurance coverage to insureds.

Reversed and remanded.

INSURANCE — NO-FAULT INSURANCE — COORDINATION OF BENEFITS.

The Legislature, when it provided that personal protection bene-
fits under a no-fault automobile insurance policy may be chosen

REFERENCES FOR POINTS IN HEADNOTE

Am Jur 2d, Automobile Insurance §§ 357-366.

Validity and construction of "no-fault" automobile insurance plans.
42 ALR3d 229.

with a provision coordinating those benefits with any health and accident insurance benefits to which the insured is entitled, intended the health and accident insurance benefits to be primary and the no-fault benefits to be secondary (MCL 500.3109a; MSA 24.13109[1]).

*John W. Kline,* and *Gromek, Bendure & Thomas* (by *Nancy L. Bosh),* of counsel, for plaintiff.

*Rifkin & Kingsley, P.C.* (by *James M. Rifkin),* for defendant.

Before: DANHOF, C.J., and R. B. BURNS and V. J. BRENNAN, JJ.

DANHOF, C.J. Defendant appeals as of right from the order of summary judgment entered on June 25, 1984, declaring that plaintiff and defendant were equally responsible for the payment of no-fault benefits to their respective insureds. Plaintiff cross-appeals.

On August 25, 1982, plaintiff brought suit against defendant, alleging that seven named insureds were each insured under a no-fault insurance contract issued by it, which contracts contained "coordination-of-benefits" clauses. Plaintiff was obligated to pay medical benefits for injuries resulting from auto accidents involving the insureds unless the insureds were covered by another source which provided medical benefits. Each insured was also covered by a contract of accident insurance from defendant, which contract specifically provided that it would pay medical benefits for accidental injuries unless the insureds were covered by no-fault insurance, in which case no-fault would be primary.

In its complaint, plaintiff averred that during 1980-1981, each of the insureds sustained injuries in auto accidents and that claims for medical

benefits were made against both plaintiff and defendant. According to plaintiff, both it and defendant denied the claims on the basis that other insurance was available. Plaintiff asserted that, despite the fact that it was not liable for benefits pursuant to the terms of its contracts, it paid the insureds an aggregate of $11,177.15 in benefits and demanded reimbursement from defendant, but defendant refused such. Plaintiff requested that the trial court enter a declaratory judgment that defendant was responsible for payment in the amount noted above.

Defendant answered the complaint, contending that under its insurance contract it was not responsible for the payment of benefits when there was applicable primary auto insurance coverage, such as plaintiff's, available at the time of the claim.

Defendant moved for summary judgment pursuant to GCR 1963, 117.2(1) [now MCR 2.116(C)(8)], but argued its motion under both 117.2(1) and 117.2(3). The trial court determined that neither party was entitled to a judgment that the other party was solely responsible for the payment of benefits. Rather, the trial court determined that, because both contract provisions were unambiguous, the only proper remedy would be to hold each party responsible for the payment of one-half the benefits owed to the insureds. An order of summary judgment to this effect was entered on June 25, 1984. At issue is the apportionment of liability between the two insurers.

Defendant asserts that its policy was a medical insurance policy with a coordination-of-benefits provision which specifically stated that if the insured had no-fault auto insurance, the auto insurance carrier would be liable for no-fault benefits. Since the insureds in the instant case had no-fault

insurance, defendant reasons that, under the clear language of its policy, plaintiff is primarily responsible for the payment of no-fault benefits.

Plaintiff, on the other hand, contends that, since no-fault insurance is compulsory and the health insurance provided by defendant is not, the coordination-of-benefits clauses in its policies should take precedence over and supersede the coordination-of-benefits clause in defendant's policy.

Section 3109a of the no-fault act, MCL 500.3109a; MSA 24.13109(1), requires insurers providing personal protection insurance to offer coordination-of-benefits options to their insureds, at correspondingly reduced rates, which "coordinate" recovery under multiple policies and seek to obviate the potential for double recovery, thereby serving to reduce insurance costs.

In *Nyquist v Aetna Ins Co,* 84 Mich App 589; 269 NW2d 687 (1978), *aff'd* 404 Mich 817; 280 NW2d 792 (1979), this Court held that an insured could coordinate his no-fault insurance benefits with Blue Cross & Blue Shield benefits. Further, in *LeBlanc v State Farm Mutual Automobile Ins Co,* 410 Mich 173; 301 NW2d 775 (1981), the Supreme Court held that an insured could also elect to coordinate his no-fault benefits with benefits provided under the Medicare program. Some confusion reigns, however, where the insurance policies at issue both contain coordination-of-benefits clauses.

In *Farm Bureau Mutual Ins Co v Horace Mann Ins Co,* 131 Mich App 98; 345 NW2d 655 (1983), *lv den* 419 Mich 880 (1984), this Court held that it is absurd to assume "that where conflicting 'other insurance' provisions exist by reason of overlapping coverages of the same occurrence [,] the provisions of one policy must yield to the provisions of the other". 131 Mich App 103, quoting from *Lamb-*

*Weston Inc v Oregon Automobile Ins Co,* 219 or 110, 128; 341 P2d 110, 118-119 (1959). This Court ruled that the conflicting clauses were to be declared repugnant and were to be rejected *in toto.* 131 Mich App 103-104. Once the conflicting clauses were disregarded, this Court found that both policies would clearly provide coverage and each insurer's liability would then be prorated based on the proportion of the combined policy limits represented by the limits of each insurer's policy. *Farm Bureau,* however, did not involve no-fault insurance.

In *Mary Free Bed Hospital & Rehabilitation Center v Ins Co of North America,* 131 Mich App 105; 345 NW2d 658 (1983), *lv den* 419 Mich 943 (1984), this Court relied upon *Farm Bureau, supra,* in reaching the same result. *Mary Free Bed* also did not involve no-fault insurance.

In *United States Fidelity & Guaranty Co v Group Health Plan of Southeast Michigan,* 131 Mich App 268; 345 NW2d 683 (1983), this Court again addressed the question of how conflicts between coordination-of-benefits clauses should be resolved. There, a no-fault insurance policy and the provisions of a group subscriber contract with a health maintenance organization were at issue. However, this Court found that there was no true conflict between the clauses because the plaintiff no-fault insurer's "excess clause" clearly indicated that benefits were not available if there was other insurance. On the other hand, the Court ruled that the defendant's "excess clause" only provided that its benefits "may be reduced" if other insurance was available. In addition, defendant's policy was unclear as to whether the claimant must merely qualify for or actually receive other benefits for the coodination-of-benefits provision to operate. Because of the clarity of plaintiff's excess clause,

coupled with the ambiguity contained in defendant's, this Court concluded that the defendant should be held primarily liable. No reliance was placed on *Farm Bureau, supra,* or *Mary Free Bed, supra.*

In *Federal Kemper Ins Co, Inc v Health Ins Administration, Inc,* 135 Mich App 76; 351 NW2d 900 (1984), plaintiff was the claimant's no-fault insurance carrier at the time of the injury. The defendant provided the claimant with health insurance under a group policy. Plaintiff paid the claimant's medical bills arising out of an automobile accident, but defendant refused to reimburse it for those payments. Both the plaintiff and the defendant claimed that it was a secondary insurer relative to the other. The plaintiff's insurance contract provided that it would not pay benefits to the extent that benefits were paid or payable for allowable expenses under the provisions of any other insurance. On the basis of this Court's ruling in *Farm Bureau, supra,* the *Kemper* Court ruled that both the plaintiff and the defendant were liable for benefits to the claimant, prorated as to the proportion of the combined policy limits represented by the limits of each insurer's policy.

While the above-cited cases have reached reasonable results, we choose not to follow them here inasmuch as the legislative history surrounding the enactment of § 3109a does not appear to have been relied upon or addressed in those cases. In their briefs, the instant parties essentially argued various policy considerations in support of their respective positions, neither party seeking the result obtained in *Farm Bureau, supra,* and *Kemper, supra,* which prorated liability based on policy limits. At oral argument, however, plaintiff cited this Court's decision in *Dean v Auto Club Ins Ass'n,* 139 Mich App 266; 362 NW2d 247 (1984),

which extensively discussed the legislative history of § 3109a. In reviewing this history as discussed in *Dean, supra,* and in *LeBlanc v State Farm, supra,* and *Nyquist v Aetna, supra,* we conclude that it evinces a clear legislative intent that the no-fault insurer provide only secondary coverage under § 3109a.

1974 House Bill 5724 was enacted into 1974 PA 72, the present MCL 500.3109a: MSA 24.13109(1). The analysis of HB 5724 prepared by the House Insurance Committee set forth several arguments in support of, and in opposition to, the bill. Each argument, however, proceeded from the premise that the coordination of benefits envisioned by the bill would make health and accident insurance, including that provided by Blue Cross & Blue Shield of Michigan, the primary coverage. The following concerns were expressed (and positions taken) in the analysis with respect to § 3109a:

"*Background Information:*
"Currently 4 of the 283 auto insurance companies doing business in Michigan offer deductibles or exclusions which cover only those items not covered by the policy holder's health and accident insurance. (These 4 auto-insurers *offer the secondary or 'wrap-around' coverage.)*

"Last September, Blue Cross/Blue Shield filed modifications with the Insurance Bureau proposing to allow its members to coordinate their medical benefits with their auto coverage by making the no-fault coverage primary and the Blues coverage wrap-around or the secondary coverage.

"*Argument For:*
"The bill would save millions of dollars for Michigan drivers and would offer them an opportunity to eliminate their duplicate, overlapping insurance coverage *since automobile insurers would be required to offer deductibles or exclusions which wrap-around a policy holder's health and accident coverage.* No-fault insurers

would offer these deductions at reduced premiums, and State insurance officials estimate the 5 to 6 million Michigan drivers could save $100 million annually.

"*Argument For:*

"Passage of the bill would create more flexibility in health and accident coverage by offering consumers an insurance option which the vast majority of underwriters operating in Michigan do not offer. Further, if the Blue Cross/Blue Shield plans gain approval for their proposed modifications, the consumer seeking health and accident coverage will have yet another option from which to choose. The bill does not make it mandatory for an insurance buyer to select these deductibles and exlusions so many could still opt for overlapping coverage.

"*Argument For:*

"*The skyrocketing hospital and medical costs could be contained to a greater extent with health and accident as the primary coverage* since these policies, like the Blue Cross/Blue Shield plans, have established limits on their reimbursement of doctor and hospital expenses. A physician who knows his or her patient has unlimited medical coverage has no incentive to keep the doctor bill at a minimum.

"*Argument Against:*

"The efficiency and ease with which the no-fault statutes have been applied would be hampered by the bill, and insurance premiums could actually rise rather than decline. In lieu of automatic, fully comprehensive coverage by the auto insurer (under no-fault), *under the proposed wrap-around deductibles,* both the no-fault insurer and the health and accident company would be required to devote extra time and money to investigate an accident claim. They would have to reach an agreement to the extent to which each is responsible to the injured person. The rapid simplified reparations which have thus far characterized no-fault settlements would be bogged down by this process of double investigation and adjustment.

"*Argument Against:*

"No-fault insurers would be unable to establish fair and equitable rates since *the multitude of wrap-around combinations would make it impossible to determine a*

*schedule for the proposed deductibles and exclusions.* No-fault is only 4 months old and insurance companies have yet to accumulate enough data to establish those premiums confidently. Spokesmen for the industry claim 18 months of data are necessary for the establishment of accurate premiums for a specific no-fault policy.

*"Argument Against:*

*"Required secondary coverage by no-fault providers* raises many ambiguities concerning the insurance statutes since no-fault is, by law, a mandatory requirement. Persons who reduce their no-fault medical coverage and then change jobs, or become unemployed, or those who misrepresent their accident and health coverage could be left without the minimum coverage required by the no-fault statutes.

*"Argument Against:*

*"Primary coverage by health and accident insurers would weaken the coverage on many persons* and would serve to confuse policyholders since it would substitute unknown, variable, noncompulsory benefits for compulsory, definitive and standardized benefits. No-fault is specifically designed to cover automobile accidents and injuries, offering the same basic coverage for everyone, but the accident and health insurers as well as Blue Cross/Blue Shield provide a puzzling number of alternative coverages, none of which are *[sic]* as complete and comprehensive as those of no-fault.

*"Argument Against:*

*"The bill discriminates against auto personal injury protection (no-fault) insurers since it does not require the accident and health insurers or Blue Cross/Blue Shield plans to offer similar deductibles to persons desiring to make their comprehensive no-fault policies primary, with other coverages being secondary.* If the intent of the bill is to save money for the consumer by offering a maximum of alternatives at reduced premiums, then health carriers should also be compelled to offer wrap-around coverage. *If accident and health coverage were made secondary, the reduction in premiums would be much larger,* particularly for persons whose policies include coverage for many dependents.

*"Neutral Discussion (Proposed Amendments):*

"The Michigan Association of Insurance Companies

suggests offering consumers another alternative by requiring health and accident insurers (by statute) to offer at reduced rates, deductibles and exclusions to persons already covered under no-fault." (Emphasis added.)

As is manifest from the legislative analysis, § 3109a was intended to offer an option to no-fault consumers to allow them to make their no-fault coverage *secondary.* We find this conclusion inescapable from the concerns expressed.

Furthermore, a letter to Governor William G. Milliken from Daniel J. Demlow, the Commissioner of Insurance, dated February 26, 1974, also evinces a similar understanding as to HB 5724. Therein the commissioner noted that the "bill gives each consumer the chance to select or reject deductibles *based on his existing non-automotive health and accident coverage".* (Emphasis added.)[1] This statement makes sense only if health and accident insurance is considered primary.

Additionally, the Supreme Court in *LeBlanc, supra,* pp 202-203, had the following to say concerning the above analysis of HB 5724:

"The anaylsis of HB 5724 prepared by the House Insurance Committee indicates that *the bill would eliminate duplicate coverage by making private accident and health insurance, as well as the group plans of Blue Cross and Blue Shield, primary sources of reimbursement for accident-related medical and hospital expense."* (Emphasis added.)

As further support for this conclusion, we look to the general purpose of § 3109a. It has been stated that § 3109a was designed to "contain or reduce insurance costs", *LeBlanc, supra,* p 197, and "was * * * concerned with the rising cost of

---

[1] See *LeBlanc v State Farm, supra,* pp 194-195, for further excerpts of this letter.

health care". *Dean, supra,* p 273. These two objectives are best fulfilled where health and accident insurance is primary, since, as noted in the analysis, "these policies, like Blue Cross/Blue Shield plans, have established limits on their reimbursement of doctor and hospital expenses". By contrast, expenses paid by no-fault insurance are subject to no such limits. To effectuate the intent of the Legislature in containing insurance costs in general, and health care costs in particular, health and accident insurance must be deemed primary.

In the instant case, we are unaware of the complete nature of defendant's policy. The lower court record contains only an excerpt of the page of defendant's policy on which the coordination-of-benefits clause is placed.[2] Defendant advances no statutory support for its attempt to make no-fault coverage primary,[3] nor is there evidence on the

---

[2] Defendant's coordination-of-benefits clause provides:
"Section 23
"Co-ordination of Benefits
"In addition to the benefits payable under this plan, sometimes an employee or dependent is entitled to benefits for the same hospital or medical expenses under group fault or no-fault auto insurance, individual no-fault auto insurance, medicare or another group plan. Should this type of duplication occur, the benefits under this plan will be co-ordinated so that the total benefits from all plans will not exceed the hospital or medical expenses actually incurred. *In all cases employees with no-fault auto insurance coverage, the auto insurance carrier will be primary.*"

[3] We note parenthetically that 1984 PA 64, MCL 550.251 *et seq.;* MSA 24.13671 *et seq.,* the Coordination of Benefits Act, in conjuction with 1984 PA 65 through 70, addresses the problem of overlapping benefits (and the coordination thereof) *among group health policies.* These acts provided for a standardized order of benefit determination *among such group health policies* in the areas of group disability (Act 65, MCl 500.3609a *et seq.;* MSA 24.13609 [1] *et seq.),* group policies of a health care corporation (Act 66, MCL 550.1401 *et seq.;* MSA 24.660 [401] *et seq.),* group policies of a medical care corporation (Act 67, MCL 550.313b; MSA 24.603[2]), group policies of a hospital service corporation (Act 68, MCL 550.510b; MSA 24.630[2]), the policies of health maintenance organizations (Act 69, MCL 333.21074; MSA 14.15 [21074]), and of dental care corporations (Act 70, MCL 550.369a; MSA 24.650[19a]). Section 2(i) of 1984 PA 64, however, defines "pol-

record that the approval of the Insurance Commissioner has been requested or granted with respect to this clause.[4] There is further no evidence that defendant's coordination-of-benefits clause was offered in such a way as to foster consumer savings, a major goal of § 3109a, see analysis on HB 5724, *supra*, or as to how premiums or employee co-pay were affected by this clause to insure that defendant is not reaping unearned premiums. That is, because no-fault is mandatory and coordination of benefits must be offered *at a reduced rate*, the insured gains an advantage from such a clause by the required reduction in premium while the insurer's reduced profits reflect a corresponding reduction in its potential liability. No such check necessarily applies to health and accident insurance. It would not be difficult to simply insert a coordination-of-benefits clause in a health and accident policy without a corresponding reduction in premium or co-pay where the determination of primary liability is governed by the policy language.

In an area such as no-fault insurance and, for that matter, health insurance as well, where the

icy" in such a way (*i.e.,* "a group disability insurance policy",) that no-fault insurance is not included. The analysis performed on 1984 Senate Bill 363 (enacted into 1984 PA 64) by the Senate Commerce Committee is also silent as to no-fault insurance.

[4] See *Siller v Employers Ins of Wausau,* 123 Mich App 140, 142; 333 NW2d 197 (1983). It is also noteworthy that MCL 500.3438, 500.3440; MSA 24.13438, 24.13440, which provide for the coordination of benefits in certain insurance contracts, similarly do not apply to no-fault insurance by virtue of MCL 500.3400(4); MSA 24.13400(4) and MCL 500.3600(1); MSA 24.13600(1). In view of the pervasiveness of the regulatory scheme existing with respect to coordination of benefits as contained in these sections, as well as those sections discussed in note 3, *supra,* in concert with the legislative history pertaining to 1974 PA 72, we believe that the new legislation's failure to coordinate such group health insurance with no-fault (and the similar failure of MCL 500.3438, 500.3440; MSA 24.13438, 24.13440) serves to indicate that no-fault coverage may not be made primary, *i.e.,* it is to be coordinated solely under the direction of § 3109a of the no-fault act.

regulatory scheme established by the Legislature is of such a pervasive nature, we agree with plaintiff that the clarity of policy language should not govern apportionment of liability.[5]

Reversed and remanded for entry of judgment and determination of liability consistent with this opinion. No costs, a question of public significance being involved.

---

[5] The result reached in this case is not necessarily in conflict with existing case law. As noted earlier, *Farm Bureau v Horace Mann, supra*, and *Mary Free Bed v INA, supra*, did not deal with no-fault insurance. *U S Fidelity v GHP, supra*, while dealing with no-fault, did not involve conflicting clauses. And, although *Kemper v Health Ins, supra*, appears to be inconsistent, there is no indication that the parties raised the issue of legislative intent. Both parties ostensibly argued the respective provisions in the insurance policies. In the case *sub judice*, however, plaintiff touched upon the relevant policy considerations in its brief and, at oral argument, specifically raised the intent of the Legislature as discussed in *Dean v Auto Club, supra*.