**ALLSTATE INSURANCE COMPANY, Individually and/or as subrogee of Michael Gouin, and Michael Gouin, individually, Plaintiffs,**

v.

**MICHIGAN CARPENTERS' COUNCIL HEALTH & WELFARE FUND, Defendant.**

**No. 4:89 CV 91.**

United States District Court, W.D. Michigan, S.D.

July 18, 1990.

Jon J. Schrotenboer, Nelson & Kreuger, P.C., Grand Rapids, Mich., for plaintiffs.

Edward R. Freeberg, Durant, Freeberg, Connelly & Piper, Kalamazoo, Mich., Christopher P. Legghio, Miller, Cohen, Martens & Ice, P.C., Southfield, Mich., for defendant.

Albert J. Engel, III, Cholette, Perkins & Buchanan, Grand Rapids, Mich., arbitrator.

## OPINION

ENSLEN, District Judge.

Plaintiffs filed this action in the Circuit Court for the County of Kalamazoo, Michigan on July 27, 1989. Pursuant to Defendant's Petition for Removal, the case was removed to the United States District Court for the Western District of Michigan on August 16, 1989. Presently before the Court is Plaintiffs' Motion for Summary Judgment.

## STANDARD

*Motion for Summary Judgment*

■ In considering a motion for summary judgment, the narrow questions presented to this Court are whether there are "no genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." F.R.Civ. Proc. 56(c). The Court cannot try issues of fact on a Rule 56 motion, but is empowered

to determine only whether there are issues to be tried. *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987); *In re Atlas Concrete Pipe, Inc.,* 668 F.2d 905, 908 (6th Cir.1982).

■ The moving party has a right to summary judgment where that party is able to demonstrate, prior to trial, that the claims of the plaintiff have no factual basis. *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As the Supreme Court held in *Celotex,* "... the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. Moreover, the Court must read the allegations of the complaint in the light most favorable to the non-moving party.

■ The standard for granting a motion for summary judgment is essentially the same as that for granting a motion for a directed verdict. "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party is not entitled to summary judgment where there is sufficient evidence to allow a reasonable jury to return a verdict for the non-moving party. *Id.* 477 U.S. at 247–50, 106 S.Ct. at 2509–11, 91 L.Ed.2d at 211–212. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* 477 U.S. at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 216. With this standard in mind, the Court will review the arguments presented by both parties.

Plaintiff Gouin was injured in an automobile accident on July 9, 1988. Gouin was insured under a no-fault automobile insurance policy issued by plaintiff Allstate Insurance Company ("Allstate"). Additionally, he was a participant in defendant Michigan Carpenters' Council Health and Welfare Fund ("Fund"), an employer benefit plan subject to the provisions of the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. § 1001 *et seq.* Allstate subsequently paid medical expenses incurred by Gouin as a result of injuries he sustained in the automobile accident. Gouin and Allstate, as subrogee of Gouin, brought this action for a Declaratory Judgment holding defendant Fund primarily liable for Gouin's medical expenses and for reimbursement from the Fund for expenses paid.

Defendant contends that the decision of the Fund's Trustees to deny benefits to plaintiff Gouin is subject to the "arbitrary and capricious" standard of review. Defendant cites to several lower court cases in support of this argument. However, the Supreme Court has recently held that "a denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard ... regardless of whether the plan at issue is funded or unfunded...." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80, 95 (1989).[1] Thus, the *de novo* standard will be applied.

■ Mich.Comp.L. 500.3109(a) of the Michigan Automobile No–Fault Act mandates that no-fault carriers offer coordination of benefits at reduced premiums when the insured has other health and accident coverage. Since Gouin had elected this type of coverage, the Allstate policy provided:

Coordination of Benefits

1. If the medical expense benefits are identified as excess under Coverage VA in the declarations, Allstate shall not be liable to the extent that any elements of loss covered under Personal Protection Insurance allowable expenses benefits are paid, payable or required to be provided to or on behalf of the named in-

---

**1.** 29 [U.S.C.] § 1132(a)(1)(B) provides: A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

sured or any relative under the provisions of any valid and collectible

(a) individual, blanket or group accident disability or hospitalization insurance,

(b) medical or surgical reimbursement plan,

(c) workers compensation law, or similar disability law, or any state or federal government laws, or

(d) automobile or premises insurance affording medical expense benefits.

(Allstate's policy, p. 6). Defendant Fund's policy contained a clause entitled "Exceptions and Limitations" which stated in part:

5. All claims arising out of the Michigan No–Fault Insurance Coverage are excluded for coverage under this plan. Motor vehicular claims arising under circumstances which Michigan No–Fault Insurance would not provide will be covered under the provisions of the plan....

Plaintiffs contend that this provision in defendant's policy is a coordination of benefits clause which is in direct conflict with plaintiffs' own coordination of benefits clause. Defendant, on the other hand, contends that the provision is an Exclusion Clause which specifically excludes from coverage claims arising under the Michigan No–Fault Act.

The court in *Federal Kemper* identified three basic types of "other insurance" provisions which intend to restrict or escape liability for a particular risk where there is other insurance: "excess," "pro rata," and "escape." An "excess" clause limits liability to the amount of loss in excess of coverage provided by other insurance while a "pro rata" clause limits the insurer's liability to a proportionate percentage of the total available coverage. An "escape" clause provides for no coverage where other benefits are available. *Federal Kemper Insurance Co., Inc. v. Health Insurance Administration, Inc.,* 424 Mich. 537, 542, 383 N.W.2d 590 (1980). Both the "pro rata" and "excess" type clauses disclaim primary liability. The "escape" type clause completely avoids liability where other insurance is available. If other insurance is not available, the escape clause has no effect.

In *Transamerica Insurance Co. of North America v. Peerless Industries,* 698 F.Supp. 1350 (W.D.Mich.1988), the Court concluded that when determining whether a given provision is an escape clause or an exclusion clause, the crucial question is whether liability is "specifically conditioned on the existence of other insurance." *Id.* at 1352. The *Transamerica* court reviewed seven purported exclusion clauses, finding only one to be a true exclusion clause. That clause stated, "[b]enefits are not payable under this Plan for injuries received in an accident involving a car or other motor vehicle." The Court concluded this language constituted a valid exclusion as it "clearly and unambiguously" provided no coverage for automobile accident injuries "regardless of the existence or nonexistence of other insurance." *Id.* at 1355. The remaining six provisions, all predicated upon the existence of other insurance, were found to be "escape" type coordination of benefit clauses.[2]

Likewise, in *Auto–Owners Insurance Co. v. Lacks Industries,* 156 Mich.App.

---

2. The six provisions provided in pertinent part:
(a) If your state has a no-fault motor vehicle law, the coverage required by that state is considered primary for motor vehicle related medical expenses ... And eligible expenses which are not paid by that carrier will then be considered for payment by the MASCO Medical Plan ...;
(b) Benefits will not be paid under this Plan for injuries received in an accident involving a car or other motor vehicle ... for which there is in effect, any policy of no-fault insurance ...;
(c) No payment will be made under this Plan: ... for or in connection with any ... injury for which the Employee or Dependant is entitled to benefits under any ... No–Fault Automobile ... Statute[s] under which the Covered person is entitled to benefits;
(d) Benefits are not payable under this Plan for injuries received in an accident involving a car or other motor vehicle ... for which there is in effect any policy of No–Fault Insurance;
(e) ... the NMH Plan will provide benefits for eligible expenses that have not been paid or are not payable under any automobile insurance policy covering you or your eligible dependents. This means any automobile insurance policy that would provide benefits in the absence of this Plan ...;

837, 402 N.W.2d 102 (1986), *lv. den.*, 428 Mich. 902 (1987), a provision which excluded liability in accident situations covered under the provisions of the Michigan No–Fault Act was found to be in fact a coordination of benefits clause. In *Federal Kemper Insurance Co. v. Health Insurance Administration, Inc.*, 424 Mich. 537, 383 N.W.2d 590 (1980), the following provision was characterized as a coordination of benefits clause: "Under 'No Fault' legislation the benefits of this plan shall be determined after the benefits provided by 'No Fault' legislation...." *See also Auto Club Insurance Association v. Frederick and Herrud, Inc.*, 145 Mich.App. 722, 377 N.W.2d 902 (1985); *United States Fidelity and Guaranty Co. v. Group Health Plan of Southeast Michigan*, 131 Mich.App. 268, 345 N.W.2d 683 (1983). The clause under consideration here is strikingly similar to the above provisions. The language does not clearly and unambiguously exclude coverage for claims arising from motor vehicle accidents. Rather, liability is assumed for those vehicular claims where "Michigan No–Fault Insurance would not provide coverage." Only when the claim is covered by Michigan No–Fault Insurance does the policy attempt to exclude coverage. Thus, it is specifically conditioned on the existence of other insurance and therefore is not an exclusion clause but in fact a coordination of benefits clause.[3]

■ Having established that the policies of both plaintiff and defendant contain coordination of benefit clauses, the second issue is which clause has precedent in this situation. Where there are conflicting coordination of benefit clauses, a health insurance carrier is primarily liable for payment where the insured elected to coordinate no-fault personal injury protection benefits with health insurance. *Federal Kemper Insurance Co. v. Health Insurance Administration, Inc.*, 424 Mich. 537, 383 N.W.2d 590 (1980). *See also Trans-*

america Insurance Co. of North America v. Peerless Industries, 698 F.Supp. 1350 (W.D.Mich.1988); *Auto–Owners Insurance Co. v. Lacks Industries*, 156 Mich.App. 837, 402 N.W.2d 102 (1986), *lv. den.* 428 Mich. 902 (1987); *Auto Club Insurance Association v. Frederick and Herrud, Inc.*, 145 Mich.App. 722, 377 N.W.2d 902 (1985). The *Federal Kemper* Court extensively analyzed the legislative history of § 3109(a) of the Michigan No–Fault Insurance Act which mandates that coordination of benefits at reduced premiums be offered by no-fault carriers where the insured has other health and accident insurance. Mich. Comp.L. § 500.3109(a). The Court concluded that the legislature intended to make health and accident insurance the primary coverage in order to effectuate the dual purposes of § 3109(a) of eliminating duplicate recovery and containing insurance costs. *Federal Kemper*, 424 Mich. at 551–52, 383 N.W.2d 590. Applying the *Federal Kemper* rule to the present case, defendant, the health care carrier, would be primarily liable, while plaintiff, the no-fault carrier, would be secondarily liable.

■ However, defendant's health plan is a self-insured plan governed by the federal Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* Thus, the third issue to be addressed is whether application of Michigan's No–Fault Insurance Act is precluded by the federal Act. There are three provisions in ERISA which determine when state law is preempted: (1) the general preemption clause, 29 U.S.C. § 1144(a); (2) the "saving" clause, 29 U.S.C. § 1144(b)(2)(A); and (3) the "deemer" clause, 29 U.S.C. § 1144(b)(2)(B). The general preemption clause expressly preempts the application of a state law which "relates to" an employee benefit plan. A state law relates to a benefit plan if it has a connection to or a reference to such a plan. *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct.

(f) No payment will be made under the Plan for expenses incurred by an employee or a dependant ... for service or treatment provided under a no-fault auto or similar legislation.
*Transamerica,* 698 F.Supp. at 1354.

3. In *Wiitanen v. State Farm Mutual Insurance Co. and Michigan Laborers' Health Care Fund*, Case No. M87–345–CA2 (W.D.Mich.) (Hearing Transcript, at 9), the United States District Court for the Western District of Michigan found language identical to the language being considered here to be coordination language.

1549, 95 L.Ed.2d 39 (1986). Since § 3109(a) requires the health plan to assume primary liability in spite of the plan's coordination of benefits clause, the state law does relate to an employee benefit plan. *Auto–Owners Insurance Co. v. Corduroy Rubber Co.*, 177 Mich.App. 600, 603, 443 N.W.2d 416.

The saving clause, however, excludes from the preemption clause any state law which "regulates insurance." In order to regulate insurance, a law must not just have an impact on the insurance business, but must be specifically directed toward that industry. *Pilot Life*, 481 U.S. at 49, 107 S.Ct. at 1554. Section 3109(a) coordinates benefits with other insurance carriers, thereby allocating risks and controlling terms in insurance contracts. Therefore, it regulates insurance within the meaning of the saving clause. *Northern Group Services v. Auto–Owners Insurance Co.*, 833 F.2d 85 (6th Cir.1987), *cert. denied* 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988).

Nevertheless, even if the state law does regulate insurance it is still preempted if it falls within the deemer clause which provides that an employee benefit plan shall not be deemed an insurer for purposes of state insurance regulation. *Pilot Life*, 481 U.S. at 45, 107 S.Ct. at 1552. The Court in *Northern Group Services* considered the applicability of the deemer clause to self-insured ERISA plans and concluded that the effect of the clause should be "assessed by a balancing of the interests in federal uniformity against those of state primacy in the regulation of insurance." *Northern Group Services*, 833 F.2d at 93. In these circumstances, the Court found no demonstrated interest in national uniformity while preemption of state law would substantially disrupt a state regulatory scheme. Thus, the Court held that Michigan's no-fault coordination of benefits law was the type of insurance regulation that is not barred by the deemer clause. *Id.*, at 95. In sum, § 3109(a) is saved from preemption by ERISA's "saving" clause and is not barred by the "deemer" clause.

Consequently, the result from application of the *Federal Kemper* rule is not altered.

Accordingly, plaintiffs' Motion for Summary Judgment will be granted as to the issue of primary liability.

Plaintiff has also filed a Supplemental Brief in Support of Summary Judgment in which it is averred that on February 12, 1990, Allstate served the Fund with Request for Admissions pursuant to Fed.R.Civ.P. 36. Allstate requested that the Fund admit that (1) medical expenses in the amount of $45,549.93 paid by Allstate on behalf of Gouin were genuine, and (2) covered benefits payable under the Michigan Carpenters' Council Health and Welfare Fund. The defendant failed to serve upon Allstate either a written answer or objections to the Request. Fed.R.Civ.P. 36(a) provides that requested matter is admitted unless a response is served upon the requesting party within 30 days after service of the request. More than 30 days have passed since the Request was served upon defendant. Consequently, the matter is deemed admitted.

Accordingly, having granted plaintiff's Motion for Summary Judgment on the question of liability, the Court will enter Judgment in favor of plaintiff in the amount of $45,549.93.