LEWIS v TRANSAMERICA INSURANCE CORPORATION OF
AMERICA

Docket No. 90925. Submitted December 15, 1986, at Lansing. Decided
May 19, 1987. Leave to appeal applied for.

Clifton Jack Lewis was injured while performing maintenance on
his pickup truck which was insured by Transamerica Insurance
Corporation of America. He was also a beneficiary under the
Michigan Conference of Teamsters Welfare Plan, which paid
$89,987.09 toward the medical expenses he incurred. Lewis
settled a products liability action filed as a result of the
incident and paid the plan $30,000 of the proceeds of the
settlement in satisfaction of a lien authorized by the plan
agreement, which characterized the payments made by the
plan to Lewis as subrogated advances against the proceeds of
any lawsuit against any third party. Lewis brought an action in
the Lapeer Circuit Court against Transamerica to recover the
$30,000. Plaintiff's policy, however, contained a coordination of
benefits clause. The court, Norman A. Baguley, J., dismissed
the claim. Plaintiff appealed.

The Court of Appeals *held:*

The term "other health or accident coverage" used in the no-
fault provision for coordination of benefits policies should be
interpreted broadly to include sums which make the injured
whole for his economic damages (medical expenses) as a result
of the accident whether characterized as benefits or advances
against future subrogated recoveries. The sums paid by the
plan constitute other health and accident coverage.

Affirmed.

REFERENCES

Am Jur 2d, Automobile Insurance §§ 357, 359, 367, 368.

Combining or "stacking" of "no fault" or personal injury protection
(PIP) coverages in automobile liability policy or policies. 29
ALR4th 12.

Validity and construction of no-fault insurance plans providing for
reduction of benefits otherwise payable by amounts receivable
from collateral sources. 10 ALR4th 996.

Validity and construction of "no-fault" automobile insurance plans.
42 ALR3d 229.

INSURANCE — NO-FAULT — COORDINATION OF BENEFITS — OTHER
    HEALTH AND ACCIDENT COVERAGE.
    The term "other health or accident coverage" used in the no-fault
        provision for coordination of benefits policies should be inter-
        preted broadly to include sums which make the injured whole
        for his economic damages (medical expenses) as a result of the
        accident whether characterized as benefits or advances against
        future subrogated recoveries (MCL 500.3109a; MSA
        24.13109[1]).

*Gagleard, Addis & Ambrunone, P.C.* (by *Michael
A. Gagleard*), for plaintiff.

*Michael J. Mangapora,* for defendant.

Before: M. J. KELLY, P.J., and SULLIVAN and
D. R. CARNOVALE,* JJ.

M. J. KELLY, P.J. Plaintiff appeals as of right
from the trial court's dismissal of his complaint for
no-fault benefits. We affirm.

Defendant, Transamerica Insurance Corporation
of America, issued a no-fault insurance policy to
plaintiff, Clifton Jack Lewis. The policy, which
included a coordination of benefits clause, was in
effect on June 5, 1981, when plaintiff sustained
severe injuries while performing maintenance on
his pickup truck. The truck slipped off two porta-
ble five-ton hydraulic jacks and struck him in the
back, rendering him a paraplegic. At the time,
plaintiff was a member of the Teamsters Union
and a beneficiary under the Michigan Conference
of Teamsters Welfare Plan which paid $89,987.09
toward medical expenses incurred by plaintiff as a
result of the accident. As the no-fault carrier,
defendant paid and continues to pay plaintiff's no-
fault benefits, including but not limited to excess
medical expenses.

* Recorder's Court judge, sitting on the Court of Appeals by assign-
ment.

After the accident, plaintiff filed a products liability action against Walker Manufacturing Company, National Automotive Parts Association and McNeil Corporation, which was settled on December 6, 1984. Plaintiff paid $30,000 of his settlement proceeds to the plan in satisfaction of a lien placed by the plan on any judgment obtained in the products liability action, as authorized under the plan agreement. Plaintiff immediately requested that his no-fault insurer, defendant, reimburse him for the $30,000 paid to the plan out of his tort settlement. Defendant denied the request and plaintiff filed this action on January 12, 1985. Defendant's motion for summary disposition was granted pursuant to MCR 2.116(C)(8) on February 14, 1986.

As already noted, plaintiff's no-fault policy of insurance included a coordination of benefits clause as authorized under §3109a of the Michigan no-fault act:

> An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household. [MCL 500.3109a; MSA 24.13109(1).]

In purchasing this coordinated benefits policy for a reduced premium, plaintiff elected to forego double recovery for medical expenses by limiting defendant's liability to secondary or excess coverage. *Federal Kemper Ins Co, Inc v Health Ins Administration, Inc,* 424 Mich 537; 383 NW2d 590 (1986).

The question here is whether the $30,000 initially paid by the plan for plaintiff's medical expenses represents "other health and accident coverage" within the meaning of § 3109a.

Plaintiff's right to recover medical expenses under the plan is governed in part by the following provision:

> No benefits shall be payable hereunder with respect to hospital, surgical, medical, or dental expenses which are included or includable in any claim or lawsuit, instituted by an employee or as a qualified dependent, or anyone acting on his/their behalf including but not limited to a personal administrator or guardian, against any third party. The welfare fund may advance an amount up to the maximum benefits otherwise payable provided the claimant subrogates the fund to the extent of such advance. In any event, even if claimant has not subrogated the fund to the extent of such advance, the welfare fund, to recover such advance payments, shall have a lien on any award or payment made in settlement of such claim or lawsuit, and claimant shall do all in his/her power to insure that said lien is honored and upheld.

Plaintiff argues that, because he recovered $30,000 in medical expenses as the result of his products liability lawsuit, that amount although initially paid by the plan was subsequently reimbursed and thus represents an "advance" only, as expressly described in the agreement, rather than "coverage" as referred to in § 3109a. We are not persuaded by plaintiff's argument.

While it is true that $30,000 of the $89,987.09 paid by the plan on behalf of plaintiff is called an "advance" in the plan contract, we find that the entire $89,987.09 paid out on behalf of plaintiff constitutes "health and accident coverage" within the meaning of § 3109a. Because of his employ-

ment as a truck driver and his membership in the Teamster's Union, plaintiff is entitled to payment of certain medical expenses resulting from the type of accident that occurred on June 5, 1981. This entitlement corresponds to the typical health insurance plan generally provided as a benefit of employment.

In *Sibley v DAIIE,* 156 Mich App 519; 402 NW2d 51 (1986), plaintiff was insured by DAIIE under a no-fault policy when, in the course of his employment with the United States Postal Service, he was injured in an automobile accident. Pursuant to the Federal Employees' Compensation Act, 5 USC 8101 *et seq.,* the federal government paid all of plaintiff's medical expenses and a portion of his lost wages. Because plaintiff had purchased a coordinated benefits policy, DAIIE paid nothing toward plaintiff's medical expenses and only compensated plaintiff for lost wages not covered under FECA. Plaintiff filed an action for noneconomic damages against the owner and driver of the other vehicle, alleging serious impairment of body function. After settling his tort claim for $32,500, plaintiff reimbursed the federal government, as required by law, for benefits paid out under FECA, which amount totaled $12,186.69, plus interest of $2,195.60. Plaintiff then filed a claim, unsuccessfully, with DAIIE to recover the $12,186.69 paid out of his settlement proceeds. Plaintiff filed suit and the trial court eventually granted defendant's motion for summary disposition.

In affirming the trial court in *Sibley,* we held that FECA benefits may be set off against no-fault benefits where both are provided as a result of the same accident. We also held that plaintiff was not entitled to recover from his no-fault insurer any amounts reimbursed to the federal government out of his tort recovery:

We begin by noting that plaintiff has been made whole for his *economic* damages. Had there been no tort recovery, plaintiff would not have been obligated under 5 USC 8132 to reimburse the federal government. Conversely, plaintiff would still have had to reimburse the federal government had there been a tort recovery, but no no-fault benefits. The necessary conclusion from this is that the reimbursement to the federal government is not an expense under § 3107. Rather, it is a burden placed on federal employees by the federal government requiring them to share with the federal government any tort recoveries received by an employee. [Emphasis added. 156 Mich App 524-525.]

The holding in *Sibley* is not dispositive of the argument raised in the instant case since, in *Sibley,* we were not concerned with the meaning of "other health and accident coverage" as provided in § 3109a. The factual parallels, however, suggest some consistency in treatment. Here, plaintiff has also been made whole for his economic damages, i.e., the medical expenses incurred as a result of his accident. Had plaintiff been unsuccessful in his products liability action, he would not have been obliged to reimburse the plan for any sums expended on his behalf.

The intent of the Legislature in enacting § 3109a of the no-fault act was to reduce insurance costs by obviating the potential for double recovery. *Auto Club Ins Ass'n v Frederick & Herrud, Inc,* 145 Mich App 722, 725; 377 NW2d 902 (1985). To accomplish this end, the Legislature purposely used the broad term "coverage" rather than "insurance" in describing health and accident benefits available to the insured independent of the no-fault contract. *United States Fidelity & Guaranty Co v Group Health Plan of Southeast Michigan,* 131 Mich App 268; 345 NW2d 683 (1983) (health

maintenance organizations constitute other health and accident coverage within the meaning of § 3109a); *LeBlanc v State Farm Mutual Automobile Ins Co,* 410 Mich 173; 301 NW2d 775 (1981) (medicare constitutes other health and accident coverage within the meaning of § 3109a); *Bagley v State Farm Mutual Automobile Ins Co,* 101 Mich App 733; 300 NW2d 322 (1980) (medical and disability benefits received from the Army and Veterans Administration constitute other health and accident coverage within the meaning of § 3109a). We are persuaded that the payments made by the plan on behalf of plaintiff also constitute other health and accident coverage within the meaning of § 3109a. Defendant, therefore, is not liable for the $30,000 reimbursed to the plan by plaintiff as the result of his products liability settlement.

Given our resolution of the foregoing issue, we need not remand to the trial court for a ruling on plaintiff's discovery motions.

Affirmed.