**AUTO CLUB INSURANCE ASSOCIATION, Plaintiff,**

v.

**MUTUAL SAVINGS AND LOAN ASSOCIATION and Administrative Systems Research Corporation, Defendants.**

No. 87–CV–10141–BC.

United States District Court,
E.D. Michigan, N.D.

Oct. 23, 1987.

Zimostrad & Zimostrad, P.C., Stanley Zimostrad, Bay City, Mich., for plaintiff.

Russ E. Boltz, Pepper, Hamilton & Scheetz, Helen Haynes, Detroit, Mich., for defendants.

## MEMORANDUM OPINION

CHURCHILL, District Judge.

In this cause, Plaintiff, Auto Club Insurance Association (Auto Club), seeks reimbursement from an employee benefit plan (the Plan) for benefits paid out under a no-fault automobile insurance policy. Auto Club also seeks a declaratory judgment that, this action is not preempted by ERISA and the Plan is obligated under M.C.L.A. § 500.3109a to reimburse Auto Club as well as any other no-fault insurer doing business in Michigan that coordinates benefits with the Plan. Auto Club offers to its insureds the option of coordinating no-fault benefits with "other health and accident coverage" in exchange for lower premium rates as required by M.C.L.A. § 500.3109a. Some time prior to May 19, 1986, Auto Club issued a no-fault insurance policy to Mary Jo Findlay, one of the Plan's participants, which provided for a coordination of medical benefits. On May 19, 1986, Gregory Findlay, who was a named insured under the policy, incurred bodily injuries from an automobile accident. To date, Auto Club has paid out some $44,-323.78 in medical benefits to Mr. Findlay. Auto Club is suing the employer, Mutual Savings and Loan Association (Mutual), and the plan administrator, Administrative Systems Research Corporation, pursuant to section 3109a, claiming that the Plan is primarily liable for these amounts. Defendant Mutual has moved for summary judgment arguing that ERISA preempts this cause of action.

### A. State Law

Section 3109a provides in pertinent part as follows:

An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premiums rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured.

While not explicit, this provision of the Michigan No–Fault Act has been interpreted as making the liability of "other health and accident coverage" primary to coordinated no-fault benefits. *See, e.g., Federal Kemper v. Health Insurance Co.*, 424 Mich. 537, 383 N.W.2d 590 (1986). In applying section 3109a, the Court must determine whether the Plan constitutes "other health and accident coverage" within the meaning of the statute. The Michigan Supreme Court has noted that the legislature's use of the word "coverage" was intentional and means *insurance* coverage. *LeBlanc v. State Farm Mutual Auto. Ins. Co.*, 410 Mich. 173, 204, 301 N.W.2d 775 (1981). The Plan is insured via stop-loss insurance by the Safeco Insurance Company to the extent a claim exceeds $30,000. Michigan courts have not, however, limited the application of section 3109a to private insurance companies. "Other health and accident coverage" within the meaning of section 3109a has been held to include: Medicare, *LeBlanc;* Blue Cross and Blue Shield plans, *Nyquist v. Aetna Insurance Co.*, 84 Mich.App. 589, 592, 269 N.W.2d 687 (1978), *aff'd*, 404 Mich. 817, 280 N.W.2d 792 (1979); health maintenance organizations, *United States Fidelity & Guaranty Co. v. Group Health Plan of Southeast Michigan*, 131 Mich.App. 268, 273, 345 N.W.2d 683 (1983); and, most recently, a union health insurance plan. *Lewis v. Transamerica Insurance Corp.*, 160 Mich.App. 413, 419, 408 N.W.2d 458 (1987). In *Lewis,* the court reasoned that the union plan was similar to "the typical health insurance plan generally provided as a benefit of employment," *id.* at 417, 408 N.W.2d 458, which plans presumably come within the ambit of section 3109a.

Given this line of cases, the Court can reach no other conclusion but that the Plan constitutes "other health and accident coverage" under section 3109a. The fact that the Plan is itself protected by stop-loss insurance only strengthens the case for applying the priority requirements of the statute, because "coverage" unquestiona-

bly includes traditional coverage by an insurance company. Therefore, under Michigan law, the liability of the Plan and its insurance company would be primary to coordinated no-fault insurance benefits if section 3109a were not preempted.

## B. ERISA Preemption

■ It is undisputed that the Plan is an "employee welfare benefit plan" as defined in the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1061. ERISA preempts state laws "insofar as they may now or hereafter relate to any employee benefit plan." *Id.* § 1144(a). The first step in the preemption analysis is to determine whether section 3109a "relates to" the Plan. The Supreme Court has broadly interpreted "relates to" as encompassing laws that have a "connection with or reference to such a plan," in light of the congressional intention to make the regulation of employee benefit plans "exclusively a federal concern." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 & n. 15, 103 S.Ct. 2890, 2900 & n. 15, 77 L.Ed.2d 490 (1983). At the same time, although even indirect state regulation may be preempted, some laws "may affect employee benefit plans in too tenuous, remote or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Id.* at 100 n. 21, 103 S.Ct. at 2901 n. 21. *See also Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550, 553–56 (6th Cir.1987) (three part test for remote and peripheral exception to preemption clause).[1] In this case, section 3109a "relates to" the Plan because the application of the statute would "subordinate the plan's coordination clause to that in a no-fault policy." *State Farm Mutual Auto. Ins. Co. v. American Community Mutual Ins.*, 659 F.Supp. 635, 637–38 (E.D. Mich.1987). As in *State Farm*, the Plan provides that its liability is secondary to no-fault insurance benefits. *See also Auto Club Insurance Ass'n v. Pipeline Industry Ben. Fund*, 654 F.Supp. 188, 190–91 (E.D.Mich.1985) (M.C.L.A. § 500.3109a relates to ERISA plans because "it would

require a contribution [from a plan] toward the total amount of benefits that are provided to an insured.") A cause of action seeking to override an express provision of an ERISA plan and to require a contribution from its funds certainly "relates to" the Plan. This is not, however, the end of the preemption inquiry.

The savings clause of ERISA provides that nothing in the preemption clause "shall be construed to exempt or relieve any person from any law of any state which regulates insurance." 29 U.S.C. § 1144(b)(2)(A). The savings clause is qualified by the deemer clause, which states that ERISA plans shall not "be deemed to be an insurance company or other insurer ... for purposes of any law of any state purporting to regulate insurance companies." *Id.* § 1144(b)(2)(B). The savings clause read together with the deemer clause, the Supreme Court has held, will only protect from preemption state insurance laws that indirectly regulate insured plans. *Metropolitan Life Insurance Company v. Massachusetts*, 471 U.S. 724, 747, 105 S.Ct. 2380, 2392, 85 L.Ed.2d 728 (1985). In order to be "saved," then, the law must regulate insurance, any regulation of the Plan must be indirect, and the Plan must be insured, meaning by an independent insurer rather than self-insurance. *Id.* at 732, 105 S.Ct. at 2385.

Section 3109a clearly falls within the terms of ERISA's savings clause, the coordination of benefits requirement being "specifically directed toward" the insurance industry and an integral part of the insurer-insured relationship which has the effect of transferring the policyholder's risk to other insurers. *Pilot Life Insurance Co. v. Dedeaux*, —— U.S. ——, ——, 107 S.Ct. 1549, 1553–55, 95 L.Ed.2d 39 (1987). In enacting section 3109a, the Michigan legislature intended to reduce the cost of mandatory insurance and eliminate overlapping coverage by requiring no-fault insurers to offer at reduced rates exclusions that supplement or "wrap-around"

---

1. This Court recognized the existence of such an exception in *Morningstar v. Meijer, Inc.*, 662 F.Supp. 555, 557 (E.D.Mich.1987) (loss of ERISA benefits alleged solely as an element of damages not preempted).

other health and accident insurance coverage. *Federal Kemper*, 424 Mich. at 546, 383 N.W.2d 590; *Auto Club Insurance Assoc. v. Frederick & Herrud*, 145 Mich. App. 722, 730–32, 377 N.W.2d 902 (1985); *Wiltzius v. Prudential Property and Casualty Co.*, 139 Mich.App. 306, 312, 361 N.W.2d 797 (1984). Additionally, as the Supreme Court found in *Metropolitan Life*, laws that regulate the provisions of insurance contracts obviously "regulate insurance" within the meaning of the savings clause because the deemer clause's explicit reference to insurance contracts would otherwise be superfluous. 471 U.S. at 741, 105 S.Ct. at 2390. Therefore, section 3109a "regulates insurance" within the meaning of the savings clause. *State Farm*, 659 F.Supp. at 638.

The next issue is whether the Plan is insured. Defendant Mutual argues that the Plan is uninsured for purposes of ERISA because, although the employer purchases stop-loss insurance from its own funds, the Plan itself does not purchase insurance and the Plan participants have no direct rights under the policy. Moreover, the stop-loss insurance only covers claims exceeding $30,000. In *State Farm*, however, this Court held that the stop-loss nature of insurance does not prevent a plan from being insured for ERISA purposes: "Whether a plan is insured or uninsured under ERISA is a question of status, not degree." 659 F.Supp. at 639. This holding is consistent with that of the Sixth Circuit in *Michigan United Food and Commercial Workers Unions v. Baerwaldt*, 767 F.2d 308 (6th Cir.1985), *cert. denied*, 474 U.S. 1059, 106 S.Ct. 801, 88 L.Ed.2d 777 (1986), reversing the district court's finding that an insurance code provision was preempted, even though the ERISA plan was insured only by stop-loss insurance. *Id.* at 312–13.

Similarly, the mere fact that the employer purchase insurance out of its own funds will not prevent a plan from being insured. So long as the effect of the insurance is to insure the plan, as in this case, it matters not that the employer paid the bill, nor that the Plan participants were not the technical beneficiaries. Mutual's argument, that the language in *Metropolitan Life, Baerwaldt*, and *State Farm* referring to the "plan's purchase of insurance"[2] means that the Plan itself must purchase the insurance in order to be insured, is unpersuasive. None of the three cases considered whether the employer may purchase the insurance for the plan. Rather, the thrust of the language in each case is that, for a plan to be insured for ERISA purposes means that it must be commercially insured as opposed to self-insurance. An employer may not invoke ERISA preemption at will and avoid the requirements of state insurance law merely by paying the insurance premiums, to insure its ERISA plan, from its own funds. Thus the Plan is insured, albeit by stop-loss insurance.

Just because the Plan is insured, however, does not necessarily mean that state law will be saved from preemption. If the application of section 3109a would result in a direct regulation of the Plan, then the deemer clause would be triggered, resulting in preemption. Otherwise, if a law "purporting to regulate insurance companies" were directly applied to the Plan, the Plan effectively would be "deemed to be an insurance company or other insurer." State insurance laws[3] may affect an ERISA plan only indirectly, as where the law regulates the insurance company from which the plan purchases insurance. *Insurance Board of Bethlehem Steel Corp. v. Muir*, 819 F.2d 408, 411 (3rd Cir.1987). In the case of an uninsured plan, any regulation of insurance whether direct or indirect is irrelevant since the plan has no connection with an insurance company, unless the plan itself is deemed an insurer in contravention of the deemer clause.

---

2. *See Metropolitan Life*, 471 U.S. at 732, 105 S.Ct. at 2385; *Baerwaldt*, 767 F.2d at 313; *State Farm*, 659 F.Supp. at 639.

3. As used in the savings and deemer clauses, state law is not limited to statutory law, but includes case law and any other state action "having the effect of law." *Pilot Life Insurance Co. v. Dedeaux*, —— U.S. ——, ——, 107 S.Ct. 1549, 1553 n. 1, 95 L.Ed.2d 39 (1987); 29 U.S.C. § 1144(c)(1).

Whether a particular law directly regulates an ERISA plan turns on an interpretation of state law.

It is evident that the use of the term coverage in section 3109a, as interpreted by Michigan courts, refers to health "insurers" albeit not necessarily private insurance companies. If section 3109a were applied to ERISA regulated benefit plans, then, it would be because the plans are considered to be health "insurers." Because the deemer clause proscribes the treatment of employee benefit plans as "insurance companies or other insurers," section 3109a is preempted. While the use of the term "coverage," meaning protection by insurance, assists the preemption analysis, it is not necessary to a finding of preemption. In a stop-loss insurance context, as here, the Plan is only protected by insurance over a certain amount. Thus an application of section 3109a would directly regulate the Plan by requiring a contribution of benefits from the Plan itself rather than only the Plan's insurance company. The states may not legislate the distribution of ERISA regulated benefits. To require a contribution of benefits in this instance, moreover, would effectively repeal the express priority provision of the Plan, thereby allowing the state to regulate directly in an area that is "exclusively a federal concern." To the extent that the Plan is protected by insurance, that is for amounts in excess of $30,000, however, an application of section 3109a would regulate the Plan only indirectly. Although an ERISA plan may not be deemed an insurer, there is no requirement that the plan's insurance company not be treated as such.

There is no apparent[4] reason why ERISA preemption should completely disrupt the allocation of liability among insurance companies. If section 3109a were not preempted, the Plan would be primarily liable for the first $30,000, the Plan's insurer would be liable for amounts over $30,000 within policy limits, and Plaintiff Auto Club would be secondary to both. It would be a reasonable construction of the statute to hold that, in this case, Auto Club is primarily liable for the first $30,000 and secondary to the Plan's insurance company for amounts above $30,000 within policy limits. The liability expectations of the Plan's insurer would thereby be the same regardless of preemption, and the no-fault insurer would be compensated to some degree, varying with the amount of stop-loss insurance, for reduced premiums imposed in conjunction with a coordination of benefits. Additionally, the legislative purposes of lowering mandatory insurance costs and eliminating overlapping coverage would not be entirely thwarted.

Principles of comity and federalism counsel federal courts, when construing preemption, to further the objectives of state law insofar as Article VI permits.[5] The concept of federalism embodies a system of government "in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Younger v. Harris*, 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971). Accordingly, preemption of state law will not be presumed in areas where the states have a strong interest or tradition of self-regulation. *E.g., Milwaukee v. Illinois*, 451 U.S. 304, 316, 101 S.Ct. 1748, 1792, 68 L.Ed.2d 114 (1981) (historic police powers not preempted absent "clear and manifest" congressional intent). States have been regulating all aspects of insurance law for

---

**4.** Because the Plan's insurer, the Safeco Life Insurance Company, is not a party to this lawsuit, the Court does not reach the issue of whether the insurance contract between Safeco and Mutual would prevent the priority requirements of section 3109a from being applied once the liability of Mutual is preempted. The latter portions of this opinion merely define the parameters of federal preemption.

**5.** In defining the breadth of federal preemption, the Supreme Court has noted, courts should have "due regard for the presuppositions of our embracing federal system, including the principle of diffusion of power not as a matter of doctrinaire localism but as a promoter of democracy." *Milwaukee v. Illinois*, 451 U.S. 304, 316, 101 S.Ct. 1784, 1792, 68 L.Ed.2d 114 (1981) (quoting *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 243, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959)).

as long as there have been states. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 316–19, 75 S.Ct. 368, 371–73, 99 L.Ed. 337 (1955). Where Congress has not manifested an intention to occupy exclusively an entire area of regulation, as it has not done in the insurance field, "it may nonetheless pre-empt state law to the extent that the state law *actually conflicts* with federal law." *Michigan Canners and Freezers Assoc. v. Agricultural Marketing and Bargaining Bd.*, 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984) (emphasis added). That is exactly what Congress has done with state insurance laws under the savings and deemer clauses of ERISA. As the Supreme Court held in *Metropolitan Life*, ERISA preempts state insurance laws, except as they indirectly regulate insured plans. In all other cases, state law would conflict with an area that Congress has chosen to occupy exclusively—the regulation of employee benefit plans. Thus Congress has preempted state insurance laws to the extent, and only to the extent, that they actually conflict with Congress' exclusive regulation of ERISA plans. The Court's formulation of section 3109a as between Auto Club and the Plan's insurance company would not conflict with this federal policy, while affording state law the respect due it in a federal system.

Accordingly, Defendant Mutual's motion for summary judgment will be granted. An appropriate order will enter.