**ST. LOUIS CHILDREN'S HOSPITAL, Plaintiff–Appellant,**

v.

**COMMERCE BANCSHARES, INC., Defendant–Respondent.**

No. 56423.

Missouri Court of Appeals, Eastern District, Division Three.

May 9, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 5, 1990.

Application to Transfer Denied Dec. 18, 1990.

John S. Sandberg, Mary A. Mellow, Rodney M. Sharp, St. Louis, for plaintiff-appellant.

Jerome M. Rubenstein, Gerard T. Carmody, Deborah B. Yates, St. Louis, for defendant-respondent.

SATZ, Presiding Judge.

This case involves insurance coverage for a child born more than three months premature in St. Louis Children's Hospital (Hospital). The hospital treated the child for approximately four months at a cost exceeding Two Hundred Thousand Dollars. The child's parents assigned to the Hospital all benefits payable under a Health Benefit Plan provided by defendant, Commerce Bancshares, Inc. (Commerce), the father's employer. The Hospital brought this action seeking payment of benefits under the Plan. The trial court entered summary judgment for Commerce. We affirm.

Employees eligible to participate in Commerce's Plan have the option of electing "individual coverage and either coverage for the spouse only, spouse and dependent children or dependent children only." The Plan Document provides that any change in

coverage will become effective on the first day of the month following an eligibility change. The Plan Document also excludes coverage for "services for pre-existing conditions" and for "newborn children less than 31 days from the date of birth except for … a premature birth." A Plan Summary distributed to employees contains the following note, the last sentence of which appears in bold type:

> expenses related to a newborn infant will only be paid if the infant is covered as a dependent prior to delivery. Therefore employees who have EMPLOYEE ONLY or EMPLOYEE PLUS SPOUSE ONLY coverage must enroll the unborn prior to delivery. As a general rule we recommend that dependent children coverage be obtained by the seventh (7th) month of pregnancy. However the obligation to enroll the unborn child prior to delivery rests with the individual employee not the COMPANY. (Underline indicates bold type.)

In the present case, the father originally opted for employee plus spouse only coverage. The father did not request a change to include coverage for his newborn child until three days after the child was born. Commerce, through its Plan Administrator, refused to pay the child's hospital bill on the grounds that it involved treatment for conditions which developed prior to the effective date of the child's coverage and thus constituted an excluded pre-existing condition under the Plan.

In the trial court, Commerce initially moved for summary judgment and then filed a motion to dismiss the Hospital's petition. To support the latter motion, Commerce contended its Plan was governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1101 *et seq.* and, Commerce argued, ERISA preempted state jurisdiction of the Hospital's claim. The court granted the motion for summary judgment without expressly ruling on the motion to dismiss.

■ Summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 74.04(c). We will affirm the summary judgment if, as a matter of law, it is sustainable on any theory. *Roberts Fertilizer, Inc. v. Steinmeier,* 748 S.W.2d 883, 886 (Mo.App.1986).

As a threshold procedural Point, the Hospital argues the trial court precluded it from attempting to show that material facts are in issue and, therefore, the court's grant of summary judgment was error. The Hospital contends it requested the court to permit discovery to determine whether ERISA governed the Plan. The court did not rule on this request. Without this discovery, the Hospital argues, the record is insufficient to support the court's implicit finding that the Plan is governed by ERISA. We disagree.

■ The record discloses considerable evidence showing the applicability of ERISA. An employee welfare benefit plan under ERISA is

> any plan … established or maintained by an employer … to the extent that such plan … was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical or hospital care or benefits…. 29 U.S.C. § 1002(1).

Defendant's "Plan Document" and "Plan Summary" were evidently intended to comply with 29 U.S.C. § 1022(a)(1), (2), which requires ERISA employers to produce a "plan description" and "summary plan description." Both documents provide the sort of information required by 29 U.S.C. § 1022(a)(2), (b). (See Appendix) Although the Plan Document does not expressly refer to ERISA, in an affidavit filed with the trial court, defendant's manager of compensation and benefits stated that the Plan was subject to ERISA. Moreover, the Plan Document refers participants to the Plan Summary for a capsulization of the "essential features of the Benefits provided under this Plan." The Plan Summary informs participants in some detail of their rights under ERISA. This evidence shows the Plan is an employee welfare benefit plan within the meaning of ERISA. Permitting

further discovery on this issue would serve no useful purpose.

The Hospital also makes several attacks on the judgment, assuming that ERISA governs the Plan. The attacks center on the pre-emptive provisions of ERISA.

■ There are three basic provisions of ERISA relating to its pre-emptive effect. The "pre-emption clause" provides that ERISA supercedes any and all state laws "relating to" ERISA-covered employee benefit plans. 29 U.S.C. § 1144(a). The "savings clause", however, limits this section by providing that no ERISA section exempts any person from state law regulating insurance, banking or securities. 29 U.S.C. § 1144(b)(2)(A). The "deemer clause" then qualifies the "savings clause" by precluding any state law purporting to regulate insurance from deeming an employee benefit plan to be an insurance company. 29 U.S.C. § 1144(b)(2)(B). As succinctly synopsized by the United States Supreme Court, the "pure mechanics" of ERISA's pre-emption provisions provide that:

> if a state law "relate[s] to ... employee benefit[s]," it is pre-empted.... The saving clause excepts from the pre-emption clause law that "regulate[s] insurance." ... The deemer clause makes clear that a state law that "purport[s] to regulate insurance" cannot deem an employee benefit plan to be an insurance company.[1]
> *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987).

The Hospital's claim for benefits under the Plan is couched in breach of contract language. Missouri's common law contract principles applicable to this claim, the Hospital contends, in effect "regulate insurance", and, therefore, the Hospital argues its claim is "saved" from pre-emption. We disagree.

■ Both the United States Supreme Court and our courts have held that ERISA pre-empts state common law contract actions by participants to collect benefits from covered plans. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); *O'Brien v. Great Lakes Container Corp.*, 748 S.W.2d 412, 415 (Mo.App.1988); *Hagler v. J.F. Jelenko & Co.*, 719 S.W.2d 486, 487 (Mo.App.1986); *State ex rel. Montgomery Ward v. Peters*, 636 S.W.2d 99, 101 (Mo. App.1982). Generally, "common law causes of action in this field have been eliminated." *Peters*, 636 S.W.2d at 101.

■ ERISA's pre-emption provisions are "deliberately expansive," reflecting Congress' intent that federal regulation of ERISA-covered plans be comprehensive. *Dedeaux*, 107 S.Ct. at 1552. The phrase "relate to," as used in the general pre-emption clause, 29 U.S.C. § 1144(a), is read broadly to include all state laws which have any "connection with or reference to" ERISA-covered plans. *Metropolitan Life Ins. Co. v. Mass.*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728, 740 (1985); *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490, 501 (1983). State common law of contracts bears such a relationship to employee welfare benefit plans and therefore comes within the general pre-emption clause. *Dedeaux*, 107 S.Ct. at 1553; *Taylor*, 107 S.Ct. at 1546; *O'Brien*, 748 S.W.2d at 415.

■ State common law of contracts does not regulate insurance within the meaning of ERISA's savings clause. *Taylor* 107 S.Ct. at 1546. The word "regulates" must be viewed with "common sense." *Dedeaux*, 107 S.Ct. at 1554. To regulate insurance, a law must not just impact insurance, it must be "specifically directed toward that industry." *Id.* at 1554. Noting

---

1. Writing for the Court in *Metropolitan Life Ins. Co. v. Mass.*, 471 U.S. 724, 739–40, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728, 740 (1985), Justice Blackmun observed

> the ... [ERISA] pre-emption sections, while clear enough on their faces, perhaps are not a model of legislative drafting, for while the

general pre-emption clause broadly preempts state law, the saving clause appears broadly to preserve States' lawmaking power over much of the same regulation. While Congress occasionally decides to return to the States what it has previously taken away, it does not normally do both at the same time.

that the "roots" of Mississippi's bad faith breach of contract law "are firmly planted in the general principles of Mississippi tort and contract law", *Id.*, the Court, in *Dedeaux*, stated that that law did not "regulate insurance" within the meaning of ERISA and held that federal law pre-empted an action alleging the improper processing of a claim for benefits under an ERISA regulated plan. *Id.* at 1558.

In the present case, the Hospital expressly admits the principles it relies on have their roots in the common law of contracts. Breach of any contract in Missouri may lead to liability. Therefore, under the *Dedeaux* Court's interpretation of ERISA, the Hospital's alleged state contract claim is not saved from pre-emption.

Moreover, ERISA has specific civil enforcement provisions, one of which enables a participant to sue "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). This is the claim the Hospital is pursuing. But, the Supreme Court interprets ERISA's legislative history as a "clear expression of congressional intent that ERISA's sole enforcement scheme [as set out in 29 U.S.C. § 1132] be exclusive." *Dedeaux* at 1558. Since "the policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA," the *Dedeaux* Court held that "the federal remedy provided by [ERISA's civil enforcement] ... provision displace[s] state causes of action." *Id.* at 1556, 1558.

The cases which the Hospital cites for the proposition that state common law of contracts is "saved" from ERISA pre-emption, *Lessard v. Metropolitan Life Ins. Co.*, 618 F.Supp. 1268 (D.Maine, 1985) and *Presti v. Connecticut General Life Ins. Co.*, 605 F.Supp. 163 (D.Cal.1985), plainly represent a dead letter in view of the Supreme Court's holdings in both *Dedeaux* and *Taylor*. The *Dedeaux* Court did indicate that state "decisional law that 'regulates insurance' may fall under the saving

clause." 107 S.Ct. at 1553 n. 1. However, no state law, decisional or statutory, is saved from ERISA pre-emption unless it regulates insurance, banking, or securities. 29 U.S.C. § 1144(b)(2)(A). In *Taylor*, the Supreme Court expressly held that state common law of contracts is "law of general application that is not a law regulating insurance." 107 S.Ct. at 1546. Since that law is not saved from ERISA pre-emption, ERISA pre-empts the Hospital's action if its petition is construed as a contract claim under generally applicable state common law.

■ However, the Hospital also contends that its contract claim is saved from ERISA pre-emption because it is based not only upon common law of general applicability, but also upon Missouri's Newborn Statute, § 376.406 RSMo 1986. The Hospital argues that this statute became part of the Plan by operation of law. The statute requires automatic coverage for newborn children under health insurance policies which, like the Plan in question, provide coverage for a family member of the insured. This mandated-benefits law, the Hospital contends, regulates insurance and is, therefore, saved from ERISA pre-emption.

■ State mandated-benefits laws, such as our Newborn Statute, are considered to regulate insurance within the meaning of ERISA's saving clause. *Metropolitan Life Ins. Co. v. Mass, supra*, 105 S.Ct. at 2393. However, the "deemer clause" forbids state insurance laws from deeming ERISA plans to be "an insurance company or other insurer" within the meaning of the savings clause. 29 U.S.C. § 1144(b)(2)(B). Therefore, as the United States Supreme Court has said, state mandated-benefits laws are saved from ERISA pre-emption only with respect to "insured", as opposed to self-insured, ERISA plans. *Metropolitan Life Ins. Co.*, 105 S.Ct. at 2393. The Court observed that ERISA's deemer clause creates an anomaly, "leaving [insured plans] ... open to indirect regulation [by state insurance laws] while [self-insured plans] are not." *Metropolitan Life Ins. Co.*, 105 S.Ct. at 2393. The Court, however, deter-

mined that it had no choice other than to "give life to a distinction created by Congress in the 'deemer clause,' a distinction Congress is aware of and one it has chosen not to alter." *Id.* Certainly, then, if Commerce's Plan is fully self-insured, it cannot be subject to Missouri's newborn law.

Commerce did present evidence that its Plan is self-insured. The Plan Document describes the Plan as "funded by Employee contributions, and by Employer Contributions". Commerce also filed the affidavit of its manager of compensation and benefits in which he stated that "no insurance company or any entity other than Commerce Bancshares, Inc. and its affiliates has agreed to pay benefits to participants under the Plan." This evidence, however, does not preclude the possibility of Commerce or the Plan Administrator using the proceeds from either employer or employee contributions, or both, to obtain reinsurance to reimburse Commerce for benefits paid to Plan participants. To the extent Commerce has failed to show whether reinsurance for the Plan has been obtained, Commerce, arguably, has not shown the Plan is fully self-insured.

Focusing on this failure, the Hospital contends the Plan may be "partially insured", and the "deemer clause", the Hospital argues, renders "partially insured plans" subject to state regulations affecting insurance. Therefore, the Hospital contends, the failure of the trial court to rule on its discovery requests deprived it of the opportunity to discover whether Commerce's Plan is "partially insured." The Hospital's argument is misdirected and, thus, misses the mark.[2]

In *Metropolitan Life Ins. Co., supra,* the Supreme Court did note that "insured" plans may be regulated by state mandated-benefits laws. 105 S.Ct. at 2393. However, as the Court also noted, this regulation is only "indirect regulation" not direct regulation. *Id.* ERISA plans, whether self-insured, fully insured, or partially insured are never subject to direct regulation by state insurance laws because the "deemer clause" forbids state insurance laws from treating an ERISA Plan as an insurer. Thus,

> if the application of [a state insurance law] would result in a direct regulation of the Plan, then the deemer clause would be triggered, resulting in pre-emption. Otherwise, if a law "purporting to regulate insurance companies" were directly applied to the Plan, the Plan effectively would be "deemed to be an insurance company or other insurer [,]" [in contravention of the deemer clause]. . . .
>
> *Auto Club Ins. Ass'n. v. Mutual Sav. and Loan Ass'n.,* 672 F.Supp. 997, 1000 (E.D.Mich.1987).

 Simply stated, states may indirectly regulate ERISA plans by directly regulating companies which provide policies to be used in a plan. A state, thus, may establish requirements which must be included in health insurance policies. A state, however, may not establish requirements which must be included in an ERISA plan. This is the anomaly noted by the Supreme Court in *Metropolitan Life Ins. Co., supra.*

 Since ERISA plans are never subject to direct regulation by state insurance law, the Missouri newborn law cannot apply directly to Commerce's Plan, regardless of any insurance which either the Plan or Commerce itself may have purchased. Moreover, the fact that an ERISA plan may be subject to indirect regulation by state insurance laws does not help the Hospital. *See, Auto Club, supra,* 672 F.Supp. at 1000; *Hutchinson v. Benton Casing Service, Inc.,* 619 F.Supp. 831, 838 (D.Miss. 1985). At most, the Hospital's lack of discovery may have deprived it of the opportunity to discover the existence of an insurer that the Hospital might have attempted to join as a party. The Hospital, however, has never made this argument in the trial

---

**2.** We refrain from deciding this issue on procedural grounds. We note, however, that the Hospital has failed to cite us to any part of the record in which it requested discovery for the purpose of determining whether the Plan was reinsured in any manner. Moreover, the Hospital did not raise this as a formal Point but rather raised it for the first time in the argument portion of its reply brief.

court nor here. Moreover, because of the deemer clause's prohibition of direct state regulation of ERISA plans, the existence of any insurance could have no bearing on the liability of Commerce, the only defendant in this action.[3]

Nevertheless, the Hospital contends the "deemer clause" does not necessarily bar all direct state regulation of self-insured ERISA plans and cites *Northern Group Services v. Auto Owners Ins. Co.*, 833 F.2d 85 (6th Cir.1987), *cert. denied* 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988), in support. The Hospital's reliance on *Northern Group* is misplaced. In that case, the court stated "the effect of the deemer clause should be assessed by a balancing of the interests in federal uniformity against those of state primacy in the regulation of insurance." *Id.* at 93. The court then held exempt from ERISA pre-emption a Michigan statute requiring that no-fault automobile insurers offer coordination of benefits provisions, making liability under no-fault coverage secondary to other health and accident coverage. *Id.* at 95. The Hospital contends that application of this balancing test leads to the conclusion that self-insured ERISA plans are subject to Missouri's newborn law. This argument is seriously flawed.

The balancing test is inconsistent with the Supreme Court's determination that ERISA's general "pre-emption provision [29 U.S.C. § 1144(a)] was intended to displace all state laws that fall within its sphere, *even including state laws that are consistent with ERISA's substantive requirements.*" *Metropolitan Life Ins. Co. v. Mass, supra,* 105 S.Ct. at 2389 (emphasis added). Moreover, this test has been the subject of both judicial skepticism, *see e.g.*

*Winstead v. Indiana Ins. Co.,* 855 F.2d 430, 435 (7th Cir.1988) and scholarly criticism. *See e.g.* Case Comment, 67 Wash.U. Quarterly 291, 302 (1989).

Even if we were to accept *Northern Group's* analysis of the deemer clause, it would not warrant application of a balancing test in this case. In *Northern Group,* the court held that a balancing test was appropriate only "in the absence of a showing of state purpose specifically to regulate the content of welfare benefits provided by ERISA." 833 F.2d at 93. The court applied the balancing test to a Michigan coordination of benefits statute because that law simply specified which insurer would pay first, without "restrict[ing] the range of options open to ERISA plans." *Id.* However, when Michigan courts subsequently interpreted their coordination of benefits statute as a mandated-benefits law, the 6th Circuit Court of Appeals, without applying any balancing test, held that the law was pre-empted by ERISA. *Liberty Mutual Ins. Group v. Iron Workers Health Fund of Eastern Michigan,* 879 F.2d 1384, 1387–88 (6th Cir. 1989). As a mandated-benefits law, Missouri's Newborn Statute also regulates the content of ERISA plans and therefore would not qualify for the balancing test prescribed by the court in *Northern Group.*

This does not end the matter, however. As noted, an ERISA participant or beneficiary is authorized to bring a civil action to "recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). ERISA grants state courts concurrent jurisdiction over this type of action. 29 U.S.C. § 1132(e). The Hospital

**3.** Since no insurer is a party to this action, the permissible scope of "direct" regulation of insurers of ERISA plans, or, stated otherwise, the permissible scope of "indirect" regulation of ERISA plans, is not in issue here.

The precise scope of indirect regulation of ERISA plans depends upon what constitutes an "insured plan" for ERISA purposes. The Court in *Metropolitan Life Ins. Co., supra,* defines "insured plans" as "plans that purchase insurance." 105 S.Ct. at 2385. In a not unusual occurrence, the lower federal courts do not agree upon the

meaning of this term and, thus, in turn, do not agree upon the permissible scope of "indirect" regulation of ERISA plans by the states. *See Michigan United Food & Commercial v. Baerwaldt,* 767 F.2d 308, 310–313 (6th Cir.1985) *cert. denied,* 474 U.S. 1059, 106 S.Ct. 801, 88 L.Ed.2d 777 (1986); *Auto Club Ins. Ass'n, supra,* 672 F.Supp. at 1000; *compare, United Food & Commercial Workers v. Pacyga,* 801 F.2d 1157, 1161–1162 (9th Cir.1986); *Moore v. Provident Life & Accident Ins. Co.,* 786 F.2d 922, 927 (9th Cir. 1986); *Bone v. Association Management Services, Inc.,* 632 F.Supp. 493, 495 (S.D.Miss.1986).

urges us to construe its petition as an action for benefits under 29 U.S.C. § 1132(a)(1)(B) if we find that that would be the only jurisdictional basis for this action. The petition may be so interpreted. That is precisely the relief which the petition seeks. Thus, the trial court had subject matter jurisdiction over this action. 29 U.S.C. § 1132(a)(1)(B); 29 U.S.C. § 1132(e).

In oral argument, Commerce asserted that the Hospital had to exhaust its administrative remedies under the Plan as a prerequisite for seeking judicial review under ERISA. No suggestion was made, however, whether Commerce believes the exhaustion of remedies must be expressly pleaded to invoke ERISA or whether it had to be shown in opposition to Commerce's motion for summary judgment, whether pleaded or not. Moreover, this issue was not raised in Commerce's brief and, thus, is not properly before us.[4]

■ In any event, the Hospital still does not prevail. A health benefits plan under ERISA is not necessarily viewed as a contract, and a denial of benefits by the administrator of the plan is not necessarily viewed as a breach of contract. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80, 92 (1989). A court's view of the denial is determined by principles of trust law, in an action for benefits under 29 U.S.C. § 1132(a)(1)(B). *Id.,* 109 S.Ct. at 954. "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard *unless* the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 956 (emphasis added). When a plan accords such discretion to the administrator, the administrator's interpre-

tation should not be disturbed if reasonable. *Id.* at 954. Under such circumstances, courts should defer to the administrator's interpretation unless that interpretation constitutes an abuse of the " '... discretion vested in them by the instrument under which they act.' " *Id.*

The Supreme Court referred to an ERISA plan providing that " 'any construction [of the agreement's provisions] adopted by the Trustees in good faith shall be binding ...' " as an example of a trust instrument which vests discretionary authority in a trustee to construe any uncertain terms of a trust. *Id.* at 954. *See also Sandifer v. Central States S.E. & S.W. Areas Pension Fund,* 709 F.Supp. 713, 715–16 (E.D.La.1989); *Retirement and Sec. Prog. for Emp's of Nat'l Rural Elec. Coop. Ass'n v. Oglethorpe Power Corp. Ret. Income Plan,* 712 F.Supp. 223, 226 (D.D.C.1989). Similarly, Commerce's Plan qualifies for the more deferential "abuse of discretion" standard of review because the Plan Document grants broad discretion to the Plan Administrator to "make *binding interpretations* of the provisions of this plan ..." (emphasis added).

■ The Hospital also argues that Commerce's denial of the benefits sought by the Hospital was based on an unreasonable interpretation of the Plan. Section 6 of the Plan Document excludes benefit payments for "newborn children less than 31 days from date of birth except for ... a premature birth." The Hospital interprets this language as automatically creating coverage for a participant's newborn children, in spite of the Plan Summary's explicit admonition that "expenses related to a newborn infant will only be paid if the infant is covered as a dependent *prior to delivery.*" (emphasis added) The Hospital argues the

---

4. Both ERISA, 29 U.S.C. § 1133(2), and Commerce's Plan Summary permit, but do not expressly require, resort to administrative remedies. We have found no persuasive authority requiring ERISA beneficiaries to exhaust administrative remedies before filing 29 U.S.C. § 1132(a)(1)(B) actions. We are aware of a case, not cited by Commerce, in which the 1st Circuit Court of Appeals engrafted an exhaustion requirement onto 29 U.S.C. § 1133(2) because "exhaustion is required for claims which

are purely contractual" and an ERISA claim "is a simple contract claim artfully dressed in statutory clothing." *Drinkwater v. Metropolitan Life Ins. Co.,* 846 F.2d 821, 826 (1st Cir.1988), *cert. denied* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988). We believe this interpretation is both unfaithful to ERISA's plain language and unfair to ERISA participants who are not apprised that they must exhaust administrative remedies before seeking legal relief.

Plan Summary must be discounted because the Summary states that it is "not a substitute for the actual documents which govern the Plan and which are the final authority in all cases of Plan interpretations." We disagree.

■ Commerce's interpretation of the Plan Document is not unreasonable, even if the Plan Summary is disregarded. The Hospital's interpretation of the Plan Document results from reading in isolation a provision which was clearly intended to be read in the context of the entire Plan Document. Section 2B.1 of that Document requires eligible employees to elect the other persons whom they wish to have covered under the Plan. Section 2B.2 of the Document provides: "the employee shall submit to the COMPANY a properly completed notice of election of coverage and statement of health for themself [sic] and each covered dependent signed by the employee *as a prerequisite for commencement of coverage under this Plan."* (emphasis added) Section 2D of the Plan Document states that "changes in coverage will be effective on the first day of the month following the date of the 'eligibility change' *when notification and application are made to the Personnel Department...."* (emphasis added) Therefore, only after being properly enrolled in the Plan is a newly covered participant eligible for included services, such as care for prematurely born infants enrolled in the Plan prior to birth.

This interpretation of the Plan Document is perfectly consistent with the Plan Summary[5], which, as required by 29 U.S.C. § 1022(a)(1), is written in a manner calculated to be understood by average Plan participants. Moreover, and notwithstanding the Plan Document's express requirement that employees elect the persons to be covered under the Plan, the Hospital's interpretation of the Plan Document would lead to the illogical conclusion that the Plan automatically provides coverage for participants' newborn children more than 31 days from their birth.

Furthermore, contrary to the Hospital's contention that the Plan provided no indication of how to enroll an unborn child, Section 2D of the Plan Document states that all coverage changes require notification and application to the Personnel Department within 31 days of an eligibility change.

Since ERISA "does not regulate the substantive content of welfare-benefit plans," *Metropolitan Life Ins. Co. v. Mass, supra,* 105 S.Ct. at 2385, an administrator's denial of benefits based on a reasonable interpretation of the plan's language survives judicial scrutiny, regardless of the reasonableness of the plan's terms.

■ Commerce's Plan Administrator is invested with discretionary authority to interpret the Plan. Its denial of the benefits sought by the Hospital is based upon a reasonable construction of the Plan Document, consistent with the unequivocal language of the Plan Summary. Therefore, the summary judgment for Commerce must be and is affirmed.

SMITH and GRIMM, JJ., concur.

### APPENDIX

29 U.S.C. § 1022(a)(2), (b) provides

The plan description and summary plan description shall contain the following information: the name and type of administration of the plan; the name and address of the person designated as agent for the service of legal process, if such person is not the administrator; the name and address of the administrator; names, titles, and addresses of any trustee or trustees (if they are persons different from the administrator); a description of the relevant provisions of any applicable collective bargain-

---

5. When a summary plan description makes representations inconsistent with the plan description, there is a split of authority as to whether the inconsistent summary description is binding upon the ERISA employer. *See, e.g. Edwards v. State Farm Mut. Auto Ins. Co.,* 851 F.2d 134, 136 (6th Cir.1988) (Inconsistent statements made in plan summaries are binding on ERISA employers); *but see O'Brien v. Sperry Univac Corp.,* 458 F.Supp. 1179, 1180 (D.D.C.1978). We need not resolve this issue in the present case since we find no inconsistency between defendant's Plan Document and Plan Summary.

ing agreement; the plan's requirements respecting eligibility for participation in benefits; a description of the provision providing for nonforfeitable pension benefits; circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; the source of financing of the plan and the identity of any organization through which benefits are provided; the date of the end of the plan year and whether the records of the plan are kept on a calendar, policy, or fiscal year basis; the procedures to be followed in presenting claims for benefits under the plan and the remedies available under the plan for the redress of claims which are denied in whole or in part ...